[No. 364-41291-1.   Division One—Panel 1.   December 28, 1970.]

C. W. LENK, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Appellants.*

*Slade Gorton, Attorney General,* and *Richard J. Powers,*

*Assistant,* for appellant Department of Labor & Industries.

*Roberts, Shefelman, Lawrence, Gay & Moch* and *James S. Turner,* for appellant H. M. Nelson and Company.

*Walthew, Warner & Keefe* and *Stephen M. Reilly,* for respondent.

SWANSON, J.—One principal question is raised by this appeal from a judgment which deleted a finding from a Board of Industrial Insurance Appeals (hereinafter referred to as the "board") order: May the board, after determining that a certain described skin condition is an occupational disease and directing the Department of Labor and Industries (hereinafter referred to as the "department") to allow the workman's claim, include in its order a finding that another condition, allegedly disabling, is not causally related to the same industrial exposure?

The workman questioned the board's jurisdictional power to make this finding in an appeal to the superior court.[1] He argued to the trial court that such a finding indirectly determined the extent of his right to benefits under the act and resolved a question not considered by the department. He said this constituted an invasion of the administrative agency's original jurisdiction. The court agreed and entered a judgment striking the questioned finding.

The department and the employer appeal and assign error to the trial court's findings of fact and conclusions of law. Their assignments of error will be discussed together since they all relate to the question of the board's jurisdictional power to enter this portion of finding 4 which states:

As of May 9, 1966, when claimant was examined by two specialists in the field of internal medicine, at the request of the Department of Labor and Industries, he had a generalized osteoarthritic condition, not causally related nor aggravated by the industrial exposure.

---

[1] The workman does not question the factual correctness of the finding—only the power of the board to make it.

A brief history of the salient facts and the procedural history are as follows:

On August 15, 1965, C. W. Lenk, a 79-year-old workman, was applying creosote with a hand brush and mop to certain bulkheads adjoining an apartment building managed by his employer. Immediately thereafter, his hands, face and neck became red and swollen. As the burns from the exposure to the creosote subsided, he developed stiffness and swelling around many of the joints of his body making it difficult for him to walk. Thereafter, on December 1, 1965, Lenk filed a claim[2] with the department alleging he sustained an injury or occupational exposure when applying creosote in the course of his employment. The Supervisor of Industrial Insurance (hereinafter referred to as the "supervisor") rejected his claim and said his condition is not the result of an industrial injury, nor is it an occupational disease.[3] Thereafter, claimant's physician[4] asked for reconsideration. The department also received a letter from the claimant. On January 27, 1966, the supervisor entered an order affirming the December 13, 1965, reject order. On February 7, 1966, claimant appealed to the board. The supervisor then ordered the matter held in abeyance pending further investigation. The department arranged for an examination of the claimant on May 9, 1966, by Drs. Robert Simpson and Daniel Coleman. On August 11, 1966, the de-

---

[2]The workman's claim is not included in the record presented to this court. However, it was stipulated that "on December 1st, 1965, a Report of Accident was received at Olympia in which it was alleged that the claimant, C. W. Lenk sustained an industrial injury or occupational disease on or about August 15th, 1965 while working for H. M. Nelson and Company."

[3]The department's order stated:

"1. That claimant's condition is not the result of an industrial injury as defined by the Workmen's Compensation Act.

"2. That the claimant's condition is not an occupational disease as contemplated by Section 51.08.140 R.C.W. 6-7-51."

[4]John Bastyr apparently filed a claim in behalf of the workman. However, Bastyr is not a medical doctor but a chiropractor and naturopath who also testified in behalf of the claimant before the board.

partment's order affirmed the prior reject orders of December 13, 1965, and stated:

WHEREAS, the Department did reconsider by arranging a commission examination by Doctors Daniel Coleman and Robert Simpson in whose opinion the claimant's condition is due to chronic degenerative joint disease which is not due to the industrial exposure;

IT IS THEREFORE ORDERED that the Department does hereby adhere to the provisions of the aforesaid order and the claim shall remain rejected pursuant thereto.

On October 7, 1966, claimant appealed to the board from the supervisor's order of August 11, 1966, which notice of appeal states:

That as a direct and proximate result of said occupational exposure to a toxic chemical by the name of creosote sustained by claimant a condition known as poly arthritis was caused or aggravated, and as a direct result of said condition the claimant is unable to engage in any gainful employment and is totally and permanently disabled.

The claimant presented to the hearing examiner testimony of the chiropractor and naturopath John Bastyr who treated the claimant with medicine, salve, and a manipulation a day or two after his exposure to creosote on August 15, 1965. The chiropractor stated that the claimant developed a general systemic reaction to the exposure to creosote and paint causing a condition known as polyarthritis. Lay testimony was also presented indicating that claimant had no prior skin trouble and that he was now unable to work. Dr. Egashira who examined and treated the claimant on December 1, 1965, testified for the department and said he did not think the visible finding of stiffness in the joints was caused by exposure to toxic materials in paint such as creosote. The department then presented the testimony of Drs. Simpson and Coleman who had examined the claimant on May 9, 1966, at the department's request. Dr. Coleman testified as follows:

Well, we felt that on a historical basis, that he very likely had had a dermititis [sic] which was the secondary to his exposure to the creosote, but beyond that we felt

that he had the objective manifestations of osteoarthritis which—when I say objective manifestations I mean evidence of osteoarthritis, and that we did not feel that the osteoarthritis from which he suffered was related to his creosote exposure *or to his dermititis* [*sic*].

(Italics ours.) The board determined that Lenk had developed a dermatitis condition from the exposure to creosote and that this skin condition constituted an occupational disease,[5] and so concluded that the supervisor's August 11, 1966, order should be reversed and directed that the claim be remanded to the department with directions to allow the claim for the dermatitis condition only, limited by the finding that

As of May 9, 1966, . . . there was no remaining evidence of the dermatitis condition in that the redness and swelling of the hands, face, and neck had disappeared.[6]

The board also entered finding 4, the basis of this appeal, which states that the workman had an arthritic condition which was not causally related to the exposure to creosote.

The claimant then appealed to the King County Superior Court from the board's January 23, 1968, order, and specifically from finding 4 thereof,[7] on the basis that the board had exceeded its jurisdiction in determining that the arthritic condition is not causally related to the industrial exposure.

The trial court entered a judgment[8] modifying the board's order by striking finding 4.

---

[5]"Occupational disease" as defined by RCW 51.08.140, means "such disease or infection as arises naturally and proximately out of employment under the mandatory or elective adoption provisions of this title."

[6]No exception was taken to this finding.

[7]Claimant's notice of appeal to the superior court states in part:

the plaintiff . . . hereby appeals . . . from so much of said order [of the board] and specifically Finding No. 4, which attempts to find that part of the claimant's condition is not related to his industrial exposure, for the reason that such matter was not at issue before the Board and that such finding is redundant and without legal effect.

[8]The trial court's conclusion that finding 4 should be stricken is not

It is not disputed that the board's and the superior court's jurisdiction is appellate only, and for the board and the trial court to consider matters not first determined by the department would usurp the prerogatives of the department, the agency vested by statute with original jurisdiction. Both parties agree that if a question is not passed upon by the department, it cannot be reviewed either by the board or the superior court. *Cole v. Department of Labor & Indus.*, 137 Wash. 538, 243 P. 7 (1926); *DuFraine v. Department of Labor & Indus.*, 180 Wash. 504, 40 P.2d 987 (1935); *Leary v. Department of Labor & Indus.*, 18 Wn.2d 532, 140 P.2d 292 (1943); *Turner v. Department of Labor & Indus.*, 41 Wn.2d 739, 251 P.2d 883 (1953).

To ascertain whether the board acted within its proper scope of review in entering finding 4, we look to the provisions of the order appealed to the board. The questions the board may consider and decide are fixed by the order from which the appeal was taken (*see Woodard v. Department of Labor & Indus.*, 188 Wash. 93, 61 P.2d 1003 (1936)) as limited by the issues raised by the notice of appeal. *Brakus v. Department of Labor & Indus.*, 48 Wn.2d 218, 292 P.2d 865 (1956).[9]

---

based on the merits of the finding. The court, in its oral opinion, commented as follows:

all I was concerned with was a matter of law whether or not findings of fact Number 4 should have been made by the Board of Industrial Insurance Appeals.

[9]Note the apparent contradiction between the language in *Woodard,* 188 Wash. at 95, when the court said,

In this connection, it must be remembered that the questions to be decided by the joint board are not determined by the allegations set forth in the petition for rehearing, but *are fixed by the order which is sought to be reviewed.*

(Italics ours.) and this statement in *Brakus,* 48 Wn.2d at 220,

We have held that, although the evidence before the board might take a wide range, the board cannot enlarge the lawful scope of the proceedings, *which is limited strictly to the issues raised by the notice of appeal* (or application for rehearing before the joint board). [Citations omitted.]

(Italics ours.) We believe the two decisions are reconcilable. The issues to be determined by the board are fixed by both the order and the allegations in the notice of appeal.

Claimant contends that when the department rejected his claim it did *not* consider the extent of the resulting effects of the industrial exposure to creosote, namely, the arthritic condition, so that when the board found that the arthritic condition was not causally related to the industrial exposure it actually determined the extent of his disability. The net effect of such a determination, claimant says, is to determine the extent of his benefits, something the board cannot do unless first done by the department.[10] But if the department *did* consider the arthritic condition, then the board could also, and there is no basis for claimant's contention.

■ What was the condition of which the workman complained? The department's first order of rejection states:

1. That claimant's condition is not the result of an industrial injury . . .
2. . . . claimant's condition is not an occupational disease . . .

When the department rejected Lenk's claim, three issues arose: (1) Whether or not there was an industrial accident or occupational exposure; (2) whether or not there exists a disability; and (3) whether or not the disability complained of is causally related to the alleged injury or occupational exposure. In *Stampas v. Department of Labor & Indus.*, 38 Wn.2d 48, 227 P.2d 739 (1951), also a reject case, the court stated at page 50:

In addition to the finding that there was an industrial

---

[10]Claimant primarily relies on three reject cases, *Cole*, *DuFraine*, and *Leary*. The Supreme Court reversed the reviewing body (the superior court) in *Cole* and *DuFraine* because they exceeded their jurisdiction when they went beyond finding that the injury was covered by the act and awarded compensation for the injury. The department had not determined what benefits were due the claimant when the claim was rejected. In *Leary*, the reviewing body (the superior court) was reversed because, in affirming the department's rejection of the claim on the basis that claimant was not in the course of employment, it went on to determine whether or not the injury was caused by exertion or disease. Causation had not been determined by the department.

injury, it must have been shown that there was a disability, and that *the injury was the cause of the disability.*

*See Groff v. Department of Labor & Indus.,* 65 Wn.2d 35, 37, 395 P.2d 633 (1964).

There is no indication that any question existed as to whether or not the exposure to creosote occurred in the claimant's course of employment; therefore, the only questions remaining are the disabling condition complained of and its relationship to the exposure. It is not enough to prove only an occupational exposure. There must be proof of a disease or infection causally connected to the employment. RCW 51.08.140. The causal relationship of the condition to the occupational exposure of August 15, 1965, was in issue.

Upon reconsideration and an examination of the claimant on May 9, 1966, by Drs. Simpson and Coleman, the department gave additional consideration to the issue of whether or not the condition complained of was related to the occupational exposure. This was a proper administrative function of the department. The order of August 11, 1966, which was appealed to the board, further indicates the scope of the department's consideration. It discloses the basis for its adherence to its prior orders when it states that the examination by Drs. Simpson and Coleman revealed claimant's condition to be due to chronic degenerative joint disease which is not due to the occupational exposure.

Even though the claim form was lost and is not included in the record before us, we know that it was not filed until December 1, 1965, after the polyarthritis or generalized arthritic condition was apparent and the dermatitis had completely subsided, as testified to by Dr. Egashira who examined the workman on December 1, 1965. Thus, the arthritic condition was the basis for the December 1st claim. It was this condition the department said was not an occupational disease since it was not causally related to the employment or, more specifically, to the exposure to creosote.

Confirmation of this conclusion is found in the workman's notice of appeal which specifically states:

That as a direct and proximate result of said occupational exposure to a toxic chemical by the name of creosote sustained by claimant a condition known as poly arthritis was caused or aggravated, and as a direct result of said condition the claimant is unable to engage in any gainful employment and is totally and permanently disabled.

It is not disputed that the board cannot consider matters not included within the notice of appeal, and the notice cannot enlarge the scope of inquiry before the board beyond the matters considered and passed upon by the department, as indicated by the order appealed from. RCW 51.52.070 provides that:

The notice of appeal to the board shall set forth in full detail the grounds upon which the person appealing considers such order, decision, or award is unjust or unlawful, and shall include every issue to be considered by the board, . . .

*See Brakus,* 48 Wn.2d at 220, where the court stated:

At all times pertinent to the present case, the law applicable to appeals from orders of the department of labor and industries . . . , the board of industrial insurance appeals, has provided that the notice of appeal shall set forth "in full detail" the grounds upon which it is considered that the order, decision, or award appealed from is unjust or unlawful, ". . . and shall include every issue to be considered by the board. . . ."

(Italics omitted.) It should be noted that claimant's notice of appeal described his condition as "polyarthritis" rather than "dermatitis." In viewing both the supervisor's order of August 11, 1966, and the claimant's notice of appeal, we conclude that the department did consider the question of whether or not the condition complained of (polyarthritis, or generalized stiffness of the joints) was the result of the alleged occupational exposure to creosote.

A substantial part of the proof presented to the hearing examiner which totaled more than 200 pages was con-

cerned with the question of whether or not there was an occupational exposure and whether or not it resulted causally in the arthritic condition complained of. The claimant's evidence was directed to this end.

█ In summary, the hearing before the board was concerned with the correctness of the department's order of August 11, 1966, and the issues framed by the notice of appeal. A full hearing on the fact of the industrial exposure, the nature of the condition complained of and its claimed relationship to the industrial exposure resulted in a determination that the claimant's exposure to creosote while in the course of his employment resulted in a condition of dermatitis which constituted an occupational disease within the meaning of the workman's compensation act. But making such a determination and reversing the department's rejection of the claim[11] does not operate to prevent the board's determination of the very question passed upon by the department and placed in issue before the board by the notice of appeal—the relationship of the condition for which the claim was filed (polyarthritis) to the industrial exposure to creosote. To do so would encourage piecemeal litigation which should be avoided. *See Beels v. Department of Labor & Indus.*, 178 Wash. 301, 34 P.2d 917 (1934).

█ With respect to the claimant's argument that neither the department's order nor the notice of appeal raise any issue as to the claimant's condition on any date other than August 15, 1965, the alleged date of the occupational exposure, so that the board in determining claimant's occupational disease on May 9, 1966, determined a question that was not before the department and not decided by it, it must be remembered that the notice of appeal from the supervisor's August 11, 1966, order specifically described

---

[11]The dermatitis condition was considered by the board even though there is no indication that the department considered whether or not the dermatitis condition was related to the industrial exposure to creosote, nor does the notice of appeal mention dermatitis. Whether or not this constitutes an enlargement of the board's review, and whether or not it was proper, need not be determined, for neither the department nor the employer excepted to this portion of the board's findings.

claimant's condition as "polyarthritis." Thus, the claimant, by his notice of appeal, raised an issue as to the existence of polyarthritis and its relationship to his employment. This condition was not in existence according to claimant's own theory and testimony until after the dermatitis condition subsided, and a systemic reaction allegedly caused the polyarthritis condition. There is no contention that this condition existed on the actual date of the occupational exposure, August 15, 1965, nor that the arthritic condition did not exist on May 9, 1966, when the examination by the department's doctors took place. A cause of action does not accrue on an occupational disease claim until some compensable disability results from the exposure. *See Nygaard v. Department of Labor & Indus.*, 51 Wn.2d 659, 321 P.2d 257 (1958). Therefore, the trial court's finding that the department's order of August 11, 1966, raised no issue as to claimant's condition on any date other than August 15, 1965, is erroneous.

Since no issue or argument has been advanced by the claimant attacking the correctness of the board's finding 4, as opposed to the board's jurisdiction, it would be a useless act to remand the case to the trial court for a trial on the merits of the finding. Further, it is not disputed that the claimant was unable to present any medical testimony establishing a causal relationship between the arthritic condition complained of and the occupational exposure. *See Chalmers v. Department of Labor & Indus.*, 72 Wn.2d 595, 434 P.2d 720 (1967). The judgment of the trial court is reversed with directions to reinstate the board's finding 4, dismiss the appeal and remand the case to the department. Attorney's fees cannot be allowed because the accident fund has not been affected by the litigation. RCW 51.52.130.

JAMES, C. J., and FARRIS, J., concur.