141 P.3d 1 (2006)
COWLITZ STUD COMPANY, Respondent,
v.
Dana CLEVENGER and the Department of Labor and Industries, Petitioners.
No. 77267-3.
Supreme Court of Washington, En Banc.
Argued March 16, 2006.
Decided August 17, 2006.
*2 Robert R. Hall, Attorney at Law, Longview, John R. Wasberg, Attorney General's office, Seattle, Steve Vinyard, Attorney General's Office, Department of Labor & Industries, Jay Douglas Geck, Office of the Attorney General, Olympia, for Petitioners.
Craig A. Staples, Attorney at Law, Vancouver, for Respondent.
Bryan P. Harnetiaux, Debra L. Stephens, Michael J. Pontarolo, Spokane, for Amicus Curiae Wash. State Trial Lawyers Ass'n Foundation.
OWENS, J.
¶ 1 We must determine whether the last injurious exposure rule applies to petitioner Dana Clevenger's industrial injury claim brought under the Industrial Insurance Act (IIA), Title 51 RCW. Clevenger's injury claim was initially filed in response to a low back injury she sustained while working for respondent Cowlitz Stud Company. Pursuant to the claim, the Department of Labor and Industries (Department) ordered Cowlitz Stud to pay time loss benefits. The superior court reversed, holding, as a matter of law, that the last injurious exposure rule barred liability of Cowlitz Stud because Clevenger's condition worsened when she subsequently worked for Hampton Lumber, a nonparty employer. The Court of Appeals, Division Two, affirmed the superior court. We reverse and hold that the superior court erred in applying the last injurious exposure rule, which is inapplicable to industrial injury claims.

FACTS
¶ 2 On May 2, 1997, Clevenger sustained a low back injury while working at Cowlitz Stud's lumber mill. Shortly thereafter, Clevenger filed an industrial injury claim with Cowlitz Stud for benefits under the IIA. On July 2, 1997, Cowlitz Stud paid Clevenger medical benefits and closed her claim. Clevenger continued working for Cowlitz Stud until May 1999.
¶ 3 In November 1999, Clevenger began working for Hampton, a nonparty that purchased the lumber mill from Cowlitz Stud. Clevenger experienced increased pain in her back during her employment with Hampton. Due to this pain, Clevenger stopped working for Hampton on July 5, 2000. Thereafter, Clevenger filed to reopen the May 1997 injury claim. On December 20, 2000, the Department ordered reopening of the claim. Subsequently, on May 30, 2001, the Department ordered that Cowlitz Stud "pay time loss compensation benefits from January 16, 2001 through April 4, 2001 and continue within the facts of the law." Clerk's Papers (CP) at 125. Cowlitz Stud appealed the Department's May 2001 order.
¶ 4 On January 11, 2002, the Board of Industrial Insurance Appeals (Board) held a hearing. At the hearing, four physicians testified. Three of the physicians, including Clevenger's treating physician, opined that Clevenger's inability to work was proximately caused by the May 2, 1997, injury she sustained while working for Cowlitz Stud. A fourth physician testified that he did not believe that the May 1997 injury proximately caused Clevenger's disability. The Board found that "Ms. Clevenger has not sustained any new injury to her low back since the industrial injury of May 2, 1997." CP at 81. The Board further found that "[c]onsistent with the nature of the disease, the claimant's lumbar degenerative condition has progressively worsened through May 30, 2001." Id. Thus, the Board affirmed the Department's May 2001 order.
¶ 5 Cowlitz Stud appealed the Board's decision to Lewis County Superior Court. On February 7, 2003, the superior court granted summary judgment in favor of Cowlitz Stud. The trial judge found that Clevenger's work for Hampton "was a proximate cause of her worsened low back condition and disability" and held that, under the last injurious exposure rule, Cowlitz Stud is "not liable for Ms. Clevenger's low back condition." CP at 6. Division Two affirmed, finding the last injurious exposure rule applicable. Cowlitz Stud Co. v. Clevenger, 127 Wash.App. 542, 547, 112 P.3d 516 (2005). Both Clevenger and the Department appealed and we granted review on January 11, 2006.

ISSUES
¶ 6 (1) Did the superior court have jurisdiction to consider the last injurious exposure rule?
*3 ¶ 7 (2) Does the last injurious exposure rule apply to industrial injury claims?
¶ 8 (3) Is Clevenger entitled to attorney fees?

ANALYSIS
¶ 9 The IIA is the product of a compromise between employers and workers. Under the IIA, employers accepted limited liability for claims that might not have been compensable under the common law. Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 469, 745 P.2d 1295 (1987). In exchange, workers forfeited common law remedies. Id. This compromise is reflected in RCW 51.04.010, which states that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy." In furtherance of this policy, the IIA is to "be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010; see also Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 811, 16 P.3d 583 (2001) ("[W]here reasonable minds can differ over what Title 51 RCW provisions mean ... the benefit of doubt belongs to the injured worker.").
¶ 10 Standard of Review. In reviewing an order of summary judgment, "this court engages in the same inquiry as the trial court." Tollycraft Yachts Corp. v. McCoy, 122 Wash.2d 426, 431, 858 P.2d 503 (1993) (citing RAP 9.12; Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 737, 844 P.2d 1006 (1993)). A trial court may grant summary judgment only "if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Dep't of Labor & Indus. v. Fankhauser, 121 Wash.2d 304, 308, 849 P.2d 1209 (1993) (citing CR 56(c)). In reviewing a summary judgment, "all facts and reasonable inferences are considered in a light most favorable to the nonmoving party, while all questions of law are reviewed de novo." Coppernoll v. Reed, 155 Wash.2d 290, 296, 119 P.3d 318 (2005) (citing Berger v. Sonneland, 144 Wash.2d 91, [102-03,] 26 P.3d 257 (2001)). The Board's interpretation of the IIA, while not binding, "is entitled to great deference." Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 138, 814 P.2d 629 (1991).
¶ 11 Jurisdiction. The Board and the superior court are limited to appellate review of IIA issues. Lenk v. Dep't of Labor & Indus., 3 Wash.App. 977, 982, 478 P.2d 761 (1970). Thus, both the Board and the superior court are limited to considering those issues decided by the Department. Hanquet v. Dep't of Labor & Indus., 75 Wash.App. 657, 661, 879 P.2d 326 (1994) (citing Lenk, 3 Wash.App. at 982, 478 P.2d 761).
¶ 12 Clevenger and the Department argue that the superior court exceeded its jurisdiction by considering the last injurious exposure rule, which, petitioners assert, was not considered by the Department. We agree that it would have been improper for the Board or the superior court to apply the last injurious exposure rule if not considered by the Department. See Hanquet, 75 Wash. App. at 663, 879 P.2d 326. However, the record in the present case is insufficient to determine whether the Department actually considered the last injurious exposure rule in deciding to order Cowlitz Stud to pay time loss compensation. The Department's order merely provides that Cowlitz Stud "is directed to pay time loss compensation benefits... within the facts of the law." CP at 125. No further findings from the Department are included in the record. Moreover, the record before the Department is not included in our appellate record. The petitioners in this case had the burden of "serv[ing] on all other parties and fil[ing] with the trial court clerk and the appellate court clerk a designation of those clerk's papers and exhibits the party wants the trial court clerk to transmit to the appellate court." RAP 9.6(a). In light of petitioners' failure to provide an adequate record on appeal to determine the Department's basis for its order, we decline to rule on this issue.[1]
*4 ¶ 13 Last Injurious Exposure Rule. An "`[o]ccupational disease'" is "such disease or infection as arises naturally and proximately out of employment under the mandatory or elective adoption provisions of this title." RCW 51.08.140.[2] In the context of occupational diseases, this court has "follow[ed] the majority of other states and adopt[ed] the last injurious exposure rule." Tri, 117 Wash.2d at 130, 814 P.2d 629. We adopted this rule to resolve the "successive carrier problem," which "arises when a worker suffers two or more episodes of disability with an intervening change of employers or change of insurance carriers by the same employer." 9 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 153.01[1], at 153-2 (2005). Under the last injurious exposure rule, "the insurer covering the risk during the most recent exposure bearing a causal relationship to the disability[] is liable for the entire amount of the award." Tri, 117 Wash.2d at 130, 814 P.2d 629. In Tri, "we adopt[ed] the rule only for purposes of determining liability among successive insurers in occupational disease cases." Id. at 140 n. 13, 814 P.2d 629 (emphasis added). The Department's subsequent codification of the last injurious exposure rule is also limited to occupational disease cases. WAC 296-14-350(1).[3] This court has never applied the last injurious exposure rule in an industrial injury case.
¶ 14 Cowlitz Stud argues that, in Tri, this court impliedly extended the last injurious exposure rule to industrial injury cases. For support, Cowlitz Stud relies on the Tri court's citation to Champion International, Inc. v. Department of Labor & Industries, 50 Wash.App. 91, 746 P.2d 1244 (1987), a Division Two decision applying the last injurious exposure rule in a successive injury case. However, in Tri, despite the citation to Champion, we explicitly limited the last injurious exposure rule to occupational disease cases. 117 Wash.2d at 140 n. 13, 814 P.2d 629. Moreover, after our decision in Tri, the Department codified a version of the last injurious exposure rule, WAC 296-14-350(1), which also limited the rule to occupational diseases cases. Thus, under the maxim expressio unius est exclusio alterius,[4] we presume that the Department, pursuant to its delegated legislative authority, intended the rule to not apply in injury cases. Accordingly, we find Cowlitz Stud's argument unpersuasive.
¶ 15 Amicus Washington State Trial Lawyers Association Foundation argues that the Tri court properly limited the last injurious exposure rule to occupational disease cases. We agree. In Tri, we adopted the last injurious exposure rule in occupational disease cases to address the "proof problem" and the "assignment of responsibility problem." 117 Wash.2d at 134-35, 814 P.2d 629. The "proof problem" is "the difficulty an injured worker has in proving that a specific exposure contributed to the development of his or her occupational disease." Id. at 135 n. 8, 814 P.2d 629. The "assignment of responsibility problem" is "the difficulty in determining which insurer should be held responsible for *5 what percentage of the award." Id. at 135, 814 P.2d 629.
¶ 16 These policy justifications support application of the last injurious exposure rule only in occupational disease cases. In Fankhauser, 121 Wash.2d 304, 849 P.2d 1209, we recognized that assignment of liability in occupational disease cases "is particularly difficult because the worker often received multiple exposures over a long period of time." Id. at 311, 849 P.2d 1209; see also In re Renfro, No. 86 2392, 1988 WL 169294, 1988 WA Wrk. Comp. LEXIS 15, ¶ 13 (Wash. Bd. of Indus. Ins. Appeals July 5, 1988) ("It would be difficult, and in many cases, an impossible burden to require a worker, disabled by means of an occupational disease, to prove the extent to which each employment contributed to the ultimate disability."). In Fankhauser, we further found that "[t]he last injurious exposure rule avoids this problem by assigning responsibility to the last insurer at risk." 121 Wash.2d at 311, 849 P.2d 1209. Such a justification is not persuasive in injury cases, in which "[t]he assignment of financial responsibility ... is relatively easy" because "[b]y its very definition, an injury is a discrete and isolated event occurring at a specific moment in time." Renfro, 1988 WL 169294, 1988 WA Wrk. Comp. LEXIS 15, ¶ 12 (citing RCW 51.08.100). Similarly, we believe it is easier for a worker in an injury case to prove that a specific incident caused an injury than it is to prove that a certain exposure caused an occupational disease.
¶ 17 Thus, we hold that the last injurious exposure rule is inapplicable in industrial injury cases. We overrule Champion insofar as it is inconsistent with this opinion.[5] Accordingly, we reverse and remand.
¶ 18 Attorney Fees. Under the IIA, when an appellate court sustains a worker's right to relief as determined by the Board, "a reasonable fee for the services of the worker's... attorney shall be fixed by the court." RCW 51.52.130 (emphasis added). Here, Clevenger requested attorney fees and Cowlitz Stud has not contested such an award. Thus, because we sustain the Department's order that Cowlitz Stud pay time loss benefits to Clevenger, we grant Clevenger's request for attorney fees under RCW 51.52.130. The amount of this award will be determined by the Supreme Court Commissioner or Clerk pursuant to RAP 18.1.

CONCLUSION
¶ 19 The last injurious exposure rule is applicable only in occupational disease cases. Thus, the superior court erred in applying the rule in the present case, which involves an industrial injury and not an occupational disease. Accordingly, we reverse the Court of Appeals decision upholding the superior court's summary judgment, grant Clevenger's request for attorney fees, and remand for further proceedings consistent with this opinion.
Concurring: ALEXANDER, C.J., C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, and FAIRHURST, JJ.
J.M. JOHNSON, J. (dissenting).
¶ 20 The last injurious exposure rule should apply to industrial injury claims, just as it does to occupational disease claims. Cowlitz Stud Company properly raised the last injurious rule to shift potential liability to Hampton Lumber. Petitioner Dana Clevenger, the Department of Labor and Industries (L & I), the industrial appeals judge or the Board of Industrial Insurance Appeals (Board) should have joined Hampton to determine the assignment of liability for Clevenger's *6 worsened condition. The majority's conclusion is erroneous. I dissent.

ANALYSIS
¶ 21 The "last injurious exposure rule" provides that an employer/insurer during the most recent exposure bearing a causal relationship to the employee's disability is liable for the entire amount of the award. Gorman v. Garlock, Inc., 155 Wash.2d 198, 216, 118 P.3d 311 (2005); Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 130, 814 P.2d 629 (1991). The rule simplifies proof in contested cases, avoiding problematic allocation of responsibility. L & I codified the last injurious exposure rule for occupational disease cases at WAC 296-14-350.
¶ 22 The rule also allocates liability between the state fund and a self-insurer providing coverage under the Industrial Insurance Act, Title 51 RCW. Dep't of Labor & Indus. v. Fankhauser, 121 Wash.2d 304, 311, 849 P.2d 1209 (1993). This court adopted the last injurious exposure rule for workers who suffered an "occupational disease," as defined by RCW 51.08.140, during consecutive employment covered by two or more insurers. Tri, 117 Wash.2d at 134-39, 814 P.2d 629.

Industrial Injuries and the Last Injurious Exposure Rule
¶ 23 The Court of Appeals explicitly adopted the last injurious exposure rule in an industrial injury case (versus an occupational disease case). Champion Int'l, Inc. v. Dep't of Labor & Indus., 50 Wash.App. 91, 93, 746 P.2d 1244 (1987) ("`an employee sustains a subsequent industrial injury which is found to be a `new' injury, the insurer at risk at the time of the second injury is liable for all of claimant's benefits'" (quoting 4 ARTHUR LARSON, WORKMEN'S COMPENSATION § 95.21 (1984))). Champion was cited by this court in Tri without any hint of disapproval. See 117 Wash.2d at 138-39, 814 P.2d 629.[1] The majority in this case, however, ignores Tri's discussion of Champion. Instead, it reads too much into a lone footnote. See majority at 4 (citing Tri, 117 Wash.2d at 140 n. 13, 814 P.2d 629).
¶ 24 This court should explicitly apply the last injurious exposure rule for industrial injury cases. Contrary to the majority's contentions, justifications for the last injurious rule's application in the occupational disease context are relevant in the industrial injury context, where claimants have successive or incremental injuries that are difficult to allocate to claimants' successive places of employment. Applying the rule in such injury cases would ensure swift relief to injured workers by efficiently assigning liability and fulfilling a claimant's burden of proof. See Tri, 117 Wash.2d at 136-38, 814 P.2d 629. Such a practical approach precludes mandatory identification of all previous employers and their respective insurance companies, as well as the often impossible task of apportioning exposure (in terms of both degree and of time) for each employer. See id.

Defensive Use of the Last Injurious Exposure Rule
¶ 25 The Court of Appeals correctly held that in applying the last injurious exposure rule, the superior court simply allocated responsibility between covered employment insurers. Cowlitz Stud Co. v. Clevenger, 127 Wash.App. 542, 552, 112 P.3d 516 (2005). The majority errs in reversing that holding. This "defensive" function of the last injurious exposure rule springs from its liability assignment aspect. Permitting an employer to raise the last injurious exposure rule to shift liability to a subsequent employer is consistent with a fair and consistent application of the rule. While results of the last injurious exposure rule may "appear unfair in a specific case, its benefit is that the costs will be spread proportionately among insurers over time by the law of averages." Tri, 117 Wash.2d at 136, 814 P.2d 629 (citing Runft v. *7 SAIF Corp., 303 Or. 493, 500, 739 P.2d 12 (1987)).
¶ 26 Once an insurer gives an injured worker notice that it intends to raise the last injurious exposure rule as a defense, the worker (or L & I) should be able to file against the defensively named employer pursuant to WAC 296-14-420(1).[2] The Board has authority to join the nonparty employer and to order payment of benefits pending resolution of the appeal. The worker will be relieved of the burden of establishing liability and will receive full benefits pending assignment of liability. WAC 296-14-420(2).
¶ 27 Here, L & I reopened Clevenger's 1997 claim effective May 30, 2000. Cowlitz Stud did not protest that order or L & I's January 8, 2001, order to pay Clevenger time loss benefits for parts of July and August 2000, presumably in part because their costs were low. But Cowlitz Stud did protest when L & I issued an April 5, 2001, order directing it to pay Clevenger under the reopened claim for January 16, 2001, through April 4, 2001, and to address long-term employability concerns. In protesting the order, Cowlitz Stud told Clevenger to file a new claim against Hampton, which would shift responsibility for payment of benefits to Hampton and the state fund. Clevenger declined.
¶ 28 Cowlitz Stud should be permitted to raise the last injurious exposure rule in challenging L & I's April 5, 2001, order directing Cowlitz Stud to pay compensation under the reopened claim. L & I's May 30, 2000, order to reopen Clevenger's claim is a determination that her injury-related condition has worsened. But that reopening order should not preclude contests bearing on the extent of the worsened condition and subsequent disability awards made by L & I.

Remand and Joinder of Indispensable Party
¶ 29 Upon Cowlitz Stud's protest and appeal of L & I's order of April 5, 2001, it was incumbent upon L & I (and the industrial appeals judge) to join Hampton as an insurer who may be liable. "It is a rule of law, as old as the law itself, that a court cannot adjudicate the rights of parties who are not actually or constructively before it, with an opportunity to defend or maintain their rights in action." State ex rel. Reed v. Gormley, 40 Wash. 601, 603, 82 P. 929 (1905). L & I made an initial determination on Clevenger's worsened injury-related condition.[3] Remand to the Board with an order to join Hampton for a de novo hearing is appropriate.[4]

CONCLUSION
¶ 30 I disagree with the majority's ruling that the last injurious exposure rule does not apply to industrial injury cases. The reasons prompting the rule dictate it be applied to all claims. Cowlitz Stud properly raised the last *8 injurious exposure rule to shift liability to Hampton. This case should be remanded to the Board of Industrial Insurance Appeals to join Hampton and conduct a hearing to determine the liability for Clevenger's worsened condition. I dissent.
Concurring: SANDERS, J.
NOTES
[1] Clevenger also argues that Cowlitz Stud's failure to challenge the Department's reopening order precludes a challenge to the Department's subsequent order that Cowlitz Stud pay time loss benefits. We agree that an administrative order may have preclusive effect. See Shoemaker v. City of Bremerton, 109 Wash.2d 504, 507, 745 P.2d 858 (1987). However, in order for issue preclusion to be applicable, the issue must have been actually decided in the prior administrative order. Id. at 508, 745 P.2d 858. Thus, because Clevenger has failed to provide a record of the Department's basis for its decision, we reject this collateral estoppel argument.
[2] In contrast, an "[i]njury'" is "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100.
[3] The codified version of the last injurious exposure rule provides the following:

The liable insurer in occupational disease cases is the insurer on risk at the time of the last injurious exposure to the injurious substance or hazard of disease during employment within the coverage of Title 51 RCW which gave rise to the claim for compensation. Such Title 51 RCW insurer shall not be liable, however, if the worker has a claim arising from the occupational disease that is allowed for benefits under the maritime laws or Federal Employees' Compensation Act.
WAC 296-14-350(1)
[4] "[T]o express or include one thing implies the exclusion of the other, or of the alternative." BLACK'S LAW DICTIONARY 620 (8th ed.1999).
[5] We have found no cases in any jurisdiction applying the last injurious exposure rule in circumstances analogous to those in the present case. Several jurisdictions limit application of the rule to occupational disease cases. See, e.g., Univ. Park Care Ctr. v. Indus. Claim Appeals Office, 43 P.3d 637, 639-40 (Colo.App.2001); Rankin v. Ford Motor Co., 1996 OK 94, 925 P.2d 39, 40; Malt Bros. I, Ltd. v. State Farm Ins. Co., 654 So.2d 570, 571 (Fla.Dist.Ct.App.1995). Jurisdictions that apply the rule in injury cases generally require a subsequent independent aggravating event in order to trigger the rule. See, e.g., Cehic v. Mack Molding, Inc., 895 A.2d 167, 170 (Vt.2006); Caekaert v. State Comp. Mut. Ins. Fund, 268 Mont. 105, 112, 885 P.2d 495 (1994); Standard Distrib. Co. v. Nally, 630 A.2d 640, 645 (Del.1993); Mendoza v. Omaha Meat Processors, 225 Neb. 771, 782, 408 N.W.2d 280 (1987).
[1] As this court stated in Tri:

The Court of Appeals has also adopted the last injurious exposure rule. In Champion, a worker suffered two on-the-job injuries. One occurred while the employer was state insured, and the other while the employer was self-insured. In holding the employer liable for the cost of vocational retraining, the court rejected apportionment and applied the last injurious exposure rule.
117 Wash.2d at 138-39, 814 P.2d 629 (citations omitted).
[2] WAC 296-14-420(1):

Whenever an application for benefits is filed where there is a substantial question whether benefits shall be paid pursuant to the reopening of an accepted claim or allowed as a claim for a new injury or occupational disease, the department shall make a determination in a single order.
[3] See Callihan v. Dep't of Labor & Indus., 10 Wash.App. 153, 156, 516 P.2d 1073 (1973):

if [the Board] finds that the department has by order made the initial determination of the injured person's claim, it then proceeds to process the appeal by conducting a de novo hearing of the claim, either by itself or through an examiner, ultimately entering findings and a decision on the merits.
[4] WAC 263-12-145(4):

After review of the record, the board may set aside the proposed decision and order and remand the appeal to the hearing process, with instructions to the industrial appeals judge to whom the appeal is assigned on remand, to dispose of the matter in any manner consistent with chapter 263-12 WAC.
Absent clear statutory directive, this court should refrain from remanding a case or controversy to any entity other than a constitutionally prescribed court of law. Here, operation of RCW 51.52.115 suggests we remand to the Board for fact-finding purposes. RCW 51.52.115 provides, in pertinent part:
Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the board, or in the complete record of the proceedings before the board. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110.