IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL CONKLIN,<br><br>     Appellant,<br><br>  v.<br><br>THE BOEING COMPANY, and<br>WASHINGTON STATE<br>DEPARTMENT OF LABOR &<br>INDUSTRIES,<br><br>     Respondents. | No. 84488-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Michael Conklin filed a workers' compensation claim with the Department of Labor and Industries in 2011 following an onset of sudden pain while working as a plane mechanic at Boeing. After years of contentious litigation, the Department found that Conklin had misrepresented the severity of his condition and ordered him to pay back the improperly obtained benefits. A few months later, the Department directed Boeing to continue paying Conklin time loss benefits, to accept responsibility for one of Conklin's conditions, and to authorize and pay for a rehabilitative surgery. Both parties appealed to the Board of Industrial Insurance Appeals. The Board affirmed the order directing Boeing to accept responsibility for Conklin's condition but reversed the orders authorizing surgery and directing payment. Conklin appealed to the superior court, which affirmed the Board's decision and closed Conklin's claim.

On appeal, Conklin makes various challenges to determinations made by the Board and superior court, arguing that the latter exceeded its scope of review by reaching issues not properly before the Board. Because all the issues Conklin raises were before the Board, and therefore, the superior court, we affirm.

FACTS

2015 Proceedings

Michael Conklin began working for Boeing as a structure mechanic in January 2011. In April 2011, Conklin was cleaning the inside of an airplane fuselage when he suddenly experienced an onset of full-body pain. Conklin filed a claim with the Department of Labor and Industries (the Department) shortly thereafter. In the meantime, Conklin continued to work light duty jobs with Boeing. About a year after Conklin filed his claim, in May 2012, the Department issued an order closing the claim. Conklin appealed the claim closure.

In 2015, following a jury trial in Snohomish County Superior Court, the court entered a judgment and order concluding that Conklin's lumbar spondylolisthesis, lumbar spondylolysis, and degenerative cervical spine conditions were proximately caused or aggravated by his occupational disease.[1]

---

[1] "Occupational disease" is defined clinically and legally. A condition must satisfy three criteria to qualify as an occupational disease: (1) a physician must present an opinion that on a more probable than not basis, work conditions are a cause of the disease or have aggravated a preexisting condition; (2) objective medical findings support the diagnosis; and (3) the disease must arise "naturally and proximately" out of employment. WASH. DEP'T OF LAB. & INDUS., OCCUPATIONAL DISEASE CLAIMS IN WORKER'S COMPENSATION 2 (Feb. 2018), https://www.lni.wa.gov/forms-publications/F252-117-000.pdf [https://perma.cc/Z58W-GM9S]; RCW 51.08.140.

After the judgment and order, Conklin's claim remained open and he continued to seek treatment and benefits for his conditions through 2017.

Present Appeal

Three Department orders form the basis of the present appeal. First, on July 20, 2018, the Department determined that Conklin willfully misrepresented his conditions to obtain $95,236.76 in time loss compensation, ordered Conklin to repay that amount, assessed a 50 percent penalty for willful misrepresentation, and reversed its prior decision to close the claim. The Department came to this conclusion after viewing evidence collected by Boeing's private investigators indicating that Conklin's conditions were not as dire as he had previously represented. Second, on August 15, 2018, the Department ordered Boeing to pay time loss compensation to Conklin from June 9, 2017 through August 31, 2017. The Department did not explain its reasoning for this conclusion. Third, on August 17, 2018, the Department ordered Boeing to authorize and pay for a C5-6 and C6-7 cervical discectomy and fusion. The Department also did not explain why it issued this order. However, this treatment could have addressed problems caused by Conklin's cervical myelopathy, a condition he claimed was related to or exacerbated by his occupational disease. Conklin appealed the July 20 order finding he willfully misrepresented his conditions. Boeing appealed all three orders, seeking claim closure.

The appeals were initially reviewed by an industrial appeals judge, who concluded, in a proposed decision and order, that although Conklin misrepresented his physical limitations, Boeing failed to establish that Conklin

actually received the benefits alleged.  The judge reversed the Department's finding of willful misrepresentation, but determined that Conklin was not entitled to time loss compensation between June 1, 2015 and June 8, 2017.  The judge also denied the cervical discectomy and fusion procedures, but kept the claim open for a lumbar injection to further treat Conklin's lumbar spondylolisthesis and spondylosis.  Both parties petitioned the Board of Industrial Insurance Appeals (Board) for review by a three judge panel.[2]

The Board held that Conklin misrepresented his physical limitations, but that Boeing and the Department failed to prove that Conklin received $95,236.76 in time loss benefits during the period at issue.  The Board reversed the Department's finding of willful misrepresentation and clarified that Conklin did not owe an overpayment for June 1, 2015 through June 8, 2017.  The Board also concluded that Conklin's preexisting cervical spine conditions and lumbar spondylolisthesis and spondylosis were, at most, only temporarily aggravated by the conditions of his employment.  The Board concluded that those conditions returned to pre-injury status "long before July 20, 2018."  It held that the Department should not have authorized the C5-6 and C6-7 cervical discectomy and fusion, that Conklin's claim-related conditions were fixed and stable, and that the claim must be closed.

Conklin appealed the Board's decision and order to Snohomish County Superior Court.  The superior court affirmed the Board's decision and order. Conklin appeals.

---

[2] The three judge panel is referred to by the parties as the "Board."

ANALYSIS

Scope of Review

The Industrial Insurance Act (Act), chapter 51 RCW, confers a "purely appellate function" on the Board and the superior court. Kingery v. Dep't of Lab. & Indus., 132 Wn.2d 162, 171, 937 P.2d 565 (1997); RCW 51.52.060; RCW 51.52.115. The Board hears appeals de novo, and its authority is "strictly limited to reviewing the specific Department action" from which the parties appealed. Kingery, 132 Wn.2d at 171. The Board may only consider and decide questions included in the appealed order or raised by the notice of appeal. Cowlitz Stud Co. v. Clevenger, 157 Wn.2d 569, 573, 141 P.3d 1 (2006); Hanquet v. Dep't of Lab. & Indus., 75 Wn. App. 657, 661, 879 P.2d 326 (1994).

On appeal to the superior court, the Board's decision and order is presumed correct and the party challenging that decision bears the burden of proof. Gorre v. City of Tacoma, 184 Wn.2d 30, 36, 357 P.3d 625 (2015); RCW 51.52.115. The superior court's review is also de novo, but it relies exclusively on the Board's record and can decide only matters previously determined by the Board or the Department. RCW 51.52.115; Malang v. Dep't of Lab. & Indus., 139 Wn. App. 677, 683, 162 P.3d 450 (2007). The court's review is further confined to issues of law or fact properly included in the notice of appeal to the Board, or in the record of proceedings before the Board. RCW 51.52.115. "Thus, a superior court's authority to determine an issue in a workers' compensation case 'depends upon whether or not the Board properly addressed that issue.' " Matthews v. Dep't of Lab. & Indus., 171 Wn. App. 477, 491, 288

P.3d 630 (2012) (quoting Hanquet, 75 Wn. App. at 663-64). The Board's decision will be overturned only if the trier of fact finds by a preponderance of the evidence that the findings and decision of the Board are incorrect. Cantu v. Dep't of Lab. & Indus., 168 Wn. App. 14, 20, 277 P.3d 685 (2012). Both the Board and the superior court "have authority under the Act to reconsider decisions properly appealed by one of the parties." Kingery, 132 Wn.2d at 172 (emphases omitted).

Standard of Review

The scope of our review is narrow. In industrial insurance appeals, we review the trial court's decision, not the decision of the Board, and apply ordinary civil standards of review. RCW 51.52.140; Peterson v. Dep't of Lab. & Indus., 17 Wn. App. 2d 208, 217, 485 P.3d 338 (2021). We review " 'whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.' " Rogers v. Dep't of Lab. & Indus., 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (quoting Watson v. Dep't of Lab. & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006)); Ruse v. Dep't of Lab. & Indus., 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999).

Although the Board's interpretation of the Industrial Insurance Act does not bind us, "it is entitled to great deference." Weyerhaeuser Co. v. Tri, 117 Wn.2d 128, 138, 814 P.2d 629 (1991). We recognize significant decisions of the Board as persuasive authority in interpreting the Act. O'Keefe v. Dep't of Lab. & Indus., 126 Wn. App. 760, 766, 109 P.3d 484 (2005).

Temporarily Totally Disabled Worker Status and Willful Misrepresentation

Conklin contends that after the superior court determined that Boeing failed to prove all the elements of willful misrepresentation, it was outside the court's scope of review to enter findings related to willful misrepresentation. He also argues that absent a finding of willful misrepresentation, the court could not reach whether Conklin was a temporarily totally disabled worker entitled to time loss compensation between June 1, 2015 and July 20, 2018. We disagree. The Department orders appealed concerned willful misrepresentation and time loss benefits during this time frame. To determine if Conklin willfully misrepresented his condition or was entitled to time loss benefits, the Board and court needed to first determine if Conklin was a temporarily totally disabled worker. Therefore, these issues were properly before the superior court.

The Act entitles a worker to compensation if they are injured in the course of their employment. RCW 51.32.010. A workplace injury may result in temporary or permanent total disability. See Hubbard v. Dep't of Lab. & Indus., 140 Wn.2d 35, 43, 992 P.2d 1002 (2000) (defining temporary total disability); RCW 51.08.160 (defining permanent total disability). "Temporary total disability" is a condition that temporarily incapacitates a worker from performing any gainful employment. Hubbard, 140 Wn.2d at 43. If a worker cannot work as a result of their industrial injury and is totally but only temporarily disabled, they have a right to time loss compensation "so long as the total disability continues." RCW 51.32.090(1); Value Village v. Vasquez-Ramirez, 11 Wn. App. 2d 590, 597, 455 P.3d 216 (2019). A worker's right to time loss compensation terminates when

7

the worker recovers to a point that their "present earning power . . . is restored to that existing at the time of the occurrence of the injury." RCW 51.32.090(3)(a). Thus, determining whether a worker is temporarily totally disabled is a prerequisite to that worker receiving time loss benefits. See RCW 51.32.090.

If a worker wrongly receives time loss benefits, RCW 51.32.240 allows the Department or a self-insurer[3] to recoup overpayments in benefits based on several statutory grounds, including "willful misrepresentation." To prevail on a willful misrepresentation claim, the Department or self-insurer must prove (1) a willful false statement, misrepresentation, omission, or concealment of any material fact, (2) specific intent of obtaining, continuing, or increasing benefits, and (3) receipt by the claimant of benefits as a result of their actions or statements. RCW 51.32.240(5). Proof that a worker lied about the true extent of their physical capabilities is not by itself sufficient to prove willful misrepresentation. In re Hejna, No. 02-24184 (Wash. Bd. of Indus. Ins. Appeals Aug. 28, 2006) (Findings of Fact, Conclusions of Law, and Order), http:// biia.wa.gov/DO/0424184_ORD_20060828_DO.PDF [https://perma.cc/UF6B-KL8G]. Instead, the Department or self-insurer must prove the worker was not entitled to time loss benefits—in other words, that the worker was not temporarily totally disabled. Matthews, 171 Wn. App. at 493-94 (non-entitlement to time loss compensation was an essential element that the Department needed to prove under RCW 51.32.240 to recoup benefits it had overpaid).

---

[3] Boeing is a self-insurer.

Here, the July 20 order, finding Conklin willfully misrepresented his conditions, and the parties' subsequent notices of appeal, provide the bases for the superior court to reach whether Conklin willfully misrepresented his condition and whether Conklin was a temporarily totally disabled worker between June 1, 2015 and July 20, 2018. The July 20 order stated:

> Time-loss compensation benefits were paid from 06/01/2015 through 06/08/2017, inclusive, to the claimant based upon the representation that he was unable to work.
>
> An investigation reveals that during the period of 06/01/2015 through 06/08/2017, the worker misrepresented his physical abilities, thereby resulting in an overpayment of benefits in the amount of $95,236.76 which was obtained by willful misrepresentation.

The July 20 order reversed a prior decision closing Conklin's claim and instead held his claim open so that he could continue receiving time loss benefits after June 8, 2017 through the date of the July 20, 2018 order. Conklin appealed the July 20 order, seeking "reversal of the determination that he engaged in willful misrepresentation for the period from 6/1/2015 through 6/8/2017."

The July 20 order, finding Conklin willfully misrepresented his conditions, and Conklin's subsequent appeal squarely placed willful misrepresentation before the Board. Still, Conklin takes issue with the Board and superior court entering *any* findings concerning willful misrepresentation after each concluded that Boeing did not meet its burden of proof.[4] He contends that entering such

---

[4] Specifically, Conklin challenges the following finding: "Mr. Conklin misrepresented his physical limitations during the period of June 1, 2015 through June 8, 2017, but neither Boeing nor the Department presented evidence Mr. Conklin actually received time-loss compensation benefits he was not otherwise entitled to as a result of his willful misrepresentation in an attempt to obtain such compensation."

findings "is contrary to liberal construction of the Act in favor of injured workers." But RCW 51.52.104 and RCW 51.52.106 required the Board to make written findings and conclusions as to each contested issue of fact and law. Because willful misrepresentation was a disputed issue, the Board was required to enter findings as to willful misrepresentation. As this issue was properly before the Board, it was appropriate for the superior court to review.

In his briefing on appeal, Conklin initially argues that after the superior court determined Boeing did not prove all elements of willful misrepresentation, it was precluded from determining whether he was a temporarily totally disabled worker. He later concedes that the court could determine whether he was a temporarily totally disabled worker between June 9, 2017 and August 31, 2017 because the Department's August 15, 2018 order directed Boeing to pay time loss benefits during that time period. Because the superior court needed to determine Conklin's status as a temporarily totally disabled worker to reach the willful misrepresentation claim, this issue was properly before the superior court. The crux of the matter is whether the time period alleged—June 1, 2015 to July 20, 2018—was properly before the court. We conclude that it was.

The July 20 willful misrepresentation order addressed time loss benefits between June 1, 2015 and June 8, 2017. But, importantly, the July 20 order corrected an earlier order that ended time loss benefits as of May 31, 2015 and closed the claim as of that date. The July 20 order omitted language about ending time loss benefits, seemingly reopening the claim. Boeing appealed the July 20 order, contesting that it erroneously omitted language ending time loss

10

benefits as of May 31, 2015 and closing the claim. Because the parties disputed whether time loss benefits were appropriate after May 31, 2015 through the July 20, 2018 order, it was appropriate for the superior court to determine if Conklin was a temporarily totally disabled worker—and thus entitled to time loss benefits—between those dates.

<u>Cervical Myelopathy and Cervical Surgery</u>

Conklin asserts that the Board's September 25, 2019 order, which made final a determination that Boeing was responsible for his cervical degenerative disc disease, precluded the superior court from reversing the Department's August 17, 2018 order directing Boeing to authorize and pay for Conklin's cervical surgery to address his cervical myelopathy. Conklin contends that the court erred in reaching whether his cervical myelopathy was causally related to his work conditions and whether cervical surgery was necessary. Because the order addressed Conklin's cervical degenerative disc disease, and not his cervical myelopathy, we disagree.

"Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties." <u>Christensen v. Grant County Hosp. Dist. No. 1</u>, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). For collateral estoppel to apply, the party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding is identical to the issue presented in the later proceeding; (2) the earlier proceeding resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party in the prior adjudication; and (4) application of the doctrine

11

does not work an injustice on the party against whom it is applied. Reninger v. Dep't of Corrections, 134 Wn.2d 437, 449, 951 P.2d 782 (1998).

Here, Conklin fails to meet the first collateral estoppel prong, that the issue decided in the Board's September 25, 2019 order is identical to the one at bar. The underlying Department order at issue directed Boeing "to authorize and pay for the C5-6, C6-7 cervical discectomy and fusion." The September 25 order adopted an earlier industrial appeals judge's proposed decision and order, which affirmed yet another earlier order stating: "The Self Insured Employer is responsible for the cervical degenerative disc disease." In the earlier proposed decision and order, the industrial appeals judge entered a conclusion of law stating that

> Michael Conklin's cervical degenerative disc disease arose naturally and proximately out of the same distinctive conditions of employment that proximately caused and/or aggravated the condition for which this claim was allowed. The Self Insured Employer is responsible for Michael Conklin's cervical degenerative disc disease.

Though this conclusion of law makes Conklin's cervical degenerative disc disease an accepted condition, it does not address what treatment is reasonable and necessary. Therefore, it does not require Boeing to authorize *any* treatment nor preclude Boeing from contesting whether a treatment is reasonable and necessary. See RCW 51.36.010 (treatment for worker's occupational disease must be "proper and necessary").

As an alternative argument, Conklin asserts that the surgery was appropriate treatment for his cervical myelopathy, which he claims is caused by

12

degenerative changes in the spine. In determining whether a condition should be accepted in an occupational disease claim, the issue is whether the condition was proximately caused by the occupational disease or by the same distinctive conditions that caused the original conditions. Street v. Weyerhaeuser Co., 189 Wn.2d 187, 194, 399 P.3d 1156 (2017).

Here, the testimony before the Board indicates that Conklin's cervical myelopathy was not proximately caused by his occupational disease. Conklin's expert witness, Dr. Michael Wright could not offer an opinion about whether Conklin's cervical myelopathy was caused by either an industrial injury or Conklin's occupational disease. When asked if he had an explanation as to how the cervical myelopathy developed, Dr. Wright responded: "I do not." Dr. Wright also opined that he didn't know "if [Conklin]'s ever had an industrial injury to his neck." He stated that when he examined Conklin, Conklin had "cervical myelopathy from cervical spinal stenosis" and that it "would be unusual for [Conklin] to acquire that type of injury from cleaning airplanes." Dr. Wright's choice of words—that myelopathy comes from spinal stenosis—implies that the myelopathy was not caused or related to Conklin's cervical degenerative disc disease. None of the testimony elicited by either party addressed whether cervical myelopathy and cervical degenerative disc disease were related conditions. Accordingly, there is not sufficient evidence to support Conklin's claim that the two conditions are linked. We conclude that sufficient evidence supported the court's determination that the treatment was unrelated to Conklin's occupational disease.

Temporarily or Permanently Aggravated Condition

Conklin asserts that the superior court exceeded the scope of its review by determining his cervical and lumbar degenerative disc diseases were only temporarily aggravated because the 2015 judgment determined causation, not duration. Because one of the orders on appeal implicitly addressed whether Conklin's conditions were caused or aggravated on a temporary or permanent basis, we disagree.

The July 20 willful misrepresentation order omitted language from the original February 20 order on willful misrepresentation that treatment was "no longer necessary" and that Conklin was not entitled to permanent partial disability. In its appeal of the July 20 order, Boeing objected to the "reversal of claim closure without [permanent partial disability]." Thus, whether Conklin's conditions were permanent or temporary was before the Board and therefore, before the superior court.

Conklin's claim that the superior court was precluded from reaching whether his conditions were temporary because the 2015 judgment only addressed causation is unavailing. The 2015 judgment did not state that it applied to Conklin's conditions in perpetuity. Moreover, Conklin appears to misunderstand the superior court's scope of review. Once raised by Boeing in its notice of appeal (and reversed by the appealed July 20 order), this issue was properly before the Board and superior court. We conclude that the court did not exceed the scope of its review by determining Conklin's conditions were only temporarily aggravated.

14

Claim Closure

Conklin maintains that there was no legal authority for the superior court to close his claim based on the July 20 order after the Board reversed the willful misrepresentation determination and affirmed that his cervical degenerative disc disease was causally related to his work conditions. We are unconvinced.

The July 20 order superseded an earlier order closing Conklin's claim. Boeing's notice of appeal specifically stated that it was appealing "reversal of claim closure." The effect of the July 20 order and Boeing's notice of appeal placed the issue of claim closure squarely before the Board and the superior court.

It is unclear from Conklin's briefing how reversal of the willful misrepresentation finding and a causation determination regarding cervical degenerative disc disease are related to claim closure. Conklin seems to argue that Boeing's appeal of the July 20 order cannot raise issues from the earlier order. But this attempt to limit the superior court's review to the substance of the July 20 order is unavailing. The July 20 order and the earlier order are inherently related—the former overturned the latter. If the opposite were true, Boeing would have no recourse to protest the changes made to the earlier order. We conclude that claim closure was properly within the superior court's scope of review.

Challenges to Findings of Fact and Conclusions of Law

Conklin assigns error to a number of findings of fact and conclusions of law made by the superior court but does not devote any part of his briefing to arguments explicitly addressing these findings and conclusions. "A party that

offers no argument in its opening brief on a claimed assignment of error waives the assignment." Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010). These assignments related to his arguments about willful misrepresentation, time loss entitlement, causation, and claim closure, and were addressed in that portion of his briefing and in the corresponding portion of this opinion.

The challenged findings and conclusions roughly follow Conklin's issue statements and can be grouped together by subject matter. Finding 8 and conclusion 2 concern willful misrepresentation and whether Conklin was a temporarily totally disabled worker entitled to time loss compensation.

[Finding] 8:     Mr. Conklin misrepresented his physical limitations during the period of June 1, 2015 through June 8, 2017, but neither Boeing nor the Department presented evidence Mr. Conklin actually received time-loss compensation benefits he was not otherwise entitled to as a result of his willful misrepresentation in an attempt to obtain such compensation.

[Conclusion] 2:  From June 1, 2015 through July 20, 2018, Conklin was not a temporarily totally disabled worker within the meaning of RCW 51.32.090.

Findings 4 and 5 and conclusions 4, 5a, and 5b concern whether Conklin's accepted conditions and his cervical myelopathy were proximately related to his occupational disease and whether treatment for those conditions was necessary and proper.

[Finding] 4:     On April 18, 2011, Mr. Conklin's occupational disease manifested when he experienced sudden whole-body pain while cleaning the inside of an airplane fuselage. The following preexisting conditions were temporarily aggravated by the same distinctive conditions of employment in the allowed occupational disease claim: lumbar spondylolisthesis, lumbar spondylolysis, and degenerative cervical spine conditions.

16

[Finding] 5: Mr. Conklin's cervical myelopathy, and his advanced degenerative changes in the L4-L5 and L5-S1 levels of his lumbar spine were not caused by Mr. Conklin's occupational disease, nor did they arise naturally and proximately out of the same distinctive conditions of employment as Mr. Conklin's occupational disease.

[Conclusion] 4: Department orders dated July 20, 2018, August 15, 2018, and August 17, 2018 are incorrect and are reversed.

[Conclusion] 5a: To deny treatment (specifically the C5-6 and C6-7 cervical discectomy and fusion, and the lumbar epidural steroid injection recommended by Dr. Wright).

[Conclusion] 5b: To deny responsibility under this claim for the conditions known as cervical myelopathy and advanced degenerative changes in the L4-5 and L5-S1 levels of Conklin's lumbar spine.

Finding 4 and 6 and conclusions 1, 4, and 5e concern causation, medical fixity, and claim closure.

[Finding] 4: On April 18, 2011, Mr. Conklin's occupational disease manifested when he experienced sudden whole-body pain while cleaning the inside of an airplane fuselage. The following preexisting conditions were temporarily aggravated by the same distinctive conditions of employment in the allowed occupational disease claim: lumbar spondylolisthesis, lumbar spondylolysis, and degenerative cervical spine conditions.

[Finding] 6: As of July 20, 2018, all claim-related conditions, including but not limited to Mr. Conklin's aggravated preexisting lumbar spondylolisthesis, lumbar spondylolysis, and degenerative cervical spine conditions were fixed and stable and required no further proper and necessary treatment.

[Conclusion] 1: As of July 20, 2018, the claim related aggravation to Conklin's preexisting conditions were fixed and stable and he was not entitled to further treatment.

[Conclusion] 4: Department orders dated July 20, 2018, August 15, 2018, and August 17, 2018 are incorrect and are reversed.

[Conclusion] 5e: To close the claim effective July 20, 2018.

17

To the extent that these findings are intertwined with the above discussion about the superior court's scope of review, we conclude that they are supported by substantial evidence. Those that are unaddressed, we decline to review. See State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

Attorney Fees

Conklin requests attorney fees under RCW 51.52.130, which provides a fixed fee for workers who receive additional relief on appeal. Boeing requests attorney fees under RAP 14.2, which allows this court to award fees and costs to the substantially prevailing party. Because Conklin does not receive additional relief on appeal, we do not award him fees. And because Boeing substantially prevails on appeal, we award it fees.

We affirm.

_Smith, C.J._

WE CONCUR:

_Bowman, J_                 _Hazelrigg, A.C.J_