[No. 41369-8-II.   Division Two.   July 17, 2012.]

ELAINE MATTHEWS, *Appellant*, v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Respondent*.

478

*Karla E. Rood* (of *Law Office of Karla E. Rood LLC*), for appellant.

*Robert M. McKenna, Attorney General,* and *James P. Mills, Assistant,* for respondent.

¶1 HUNT, J. — Elaine Matthews appeals the superior court's order affirming the Board of Industrial Insurance's final order that she repay the Department of Labor and Industries' overpaid time-loss compensation benefits for twelve work periods during which she had received benefits while she was earning wages from three sequential jobs. She argues that the superior court and the Board (1) lacked subject matter jurisdiction to enter their respective orders because the Department had not decided whether she was still "entitle[d] to time-loss compensation" benefits, despite her temporary work, or whether she had induced her overpayments by a means other than the unproved "willful misrepresentation" alleged in the Department's order; and (2) erred in concluding that she had been overpaid time-loss

compensation benefits where the Department had determined her overpayments based on only the alleged and unproved willful misrepresentation, without considering whether she had engaged in innocent misrepresentation or some other statutory ground justifying recoupment of the overpayment. Br. of Appellant at 9-10.

¶2 We hold that, after finding insufficient proof of willful misrepresentation to support the Department's imposition of a statutory 50 percent penalty (which the Board vacated), the Board and the superior court had jurisdiction and did not exceed their respective scopes of review in affirming (1) the Department's finding of overpayment of time-loss compensation benefits to Matthews while she was employed and (2) the Department's order that Matthews reimburse such overpayments to the Department in an amount to be recalculated on remand. We affirm the Board and the superior court's upholding the Department's overpayment finding; and we remand to determine the amount of overpayment that Matthews must reimburse the Department.[1]

## FACTS

¶3 Elaine Matthews immigrated to the United States from Sierra Leone 15 years ago, learned to speak English, obtained her GED (general education development) certificate, and earned a four-year nursing degree from Walla Walla Community College. When limited English skills hindered her ability to pass the state licensing exam, she began working as a licensed practical nurse for a nursing agency.

---

[1] The Department did not cross appeal the Board's reversal of the Department's willful misrepresentation finding and the Board's vacation of the Department's corresponding 50 percent penalty assessment. Thus, these issues are not before us in this appeal. According to the Department, it could not appeal the Board's final determination that the Department had failed to prove willful misrepresentation because it can appeal only questions of law and this was a question of fact.

I. Overpayment of Benefits

A. Work Injury; Commencement of Time-Loss Benefits

¶4 Around May 18, 2006, Matthews slipped, fell, and was injured while working at Puget Sound Health Care Center. The fall caused a broken tooth and head and back injuries, resulting in persistent numbness and tingling sensations in her feet and partial loss of eyesight in her left eye. She filed an industrial insurance claim with the Department, which allowed her claim and began sending her time-loss compensation, or "wage replacement," benefits on June 21. Administrative Record (AR) at 331.

¶5 Matthews was eligible to continue receiving these time-loss compensation benefits as long as she was "unable to work." AR at 331. But as a condition of receiving these benefits, the Department required Matthews (1) to submit monthly worker verification forms certifying that she had not performed "*any* work, paid or unpaid" during the previous payment period and that she was seeking continued time-loss compensation benefits; (2) to confer regularly with vocational rehabilitation counselor Michelle Barré to assess whether she (Matthews) was able to work; and (3) to have a medical provider certify that she remained unable to work. AR at 447. To enforce this condition, each of Matthews' time-loss compensation payment orders, which the Department mailed with her benefit checks, included the following admonishment:

> DO NOT CASH THIS WARRANT IF YOU WERE RELEASED FOR WORK OR *RETURNED TO ANY TYPE OF WORK* DURING THE PERIOD PAID BY THIS ORDER OF PAYMENT.

AR at 473 (emphasis added).

¶6 When Matthews first began receiving time-loss compensation benefits, she "consistently and regularly" returned the Department's required worker verification forms, certi-

fying that she had not performed any work during the previous payment period. AR at 340. About a year later, she began feeling "depressed"; feared losing her nursing skills; asked her doctor about trying to return to work gradually; and, in summer 2007, attempted to reenter the workforce as a licensed practical nurse.

## B. Unreported Earnings while Receiving Time-Loss Benefits

¶7  In May 2007, Matthews stopped returning her worker verification forms to the Department; within two months, she began working again. From July 6, 2007, to January 20, 2008, she received wages from three different employers while simultaneously receiving time-loss compensation benefits from the Department. She failed to report any of her employment or her wages to the Department; and she did not notify her claims manager or her vocational rehabilitation counselor (Barré) that she had returned to work.

¶8  From July 6 until August 26, 2007,[2] Matthews worked for and received $6,075.20 in wages from Avalon Care Center, while also receiving $4,551.04 in time-loss compensation benefits from the Department. From September 16 through October 22, 2007, she worked for and received $4,530.16 in wages (including a $300.00 bonus) from Bel Air Health & Rehab, while also receiving $3,238.24 in time-loss compensation benefits from the Department.[3] From November 28, 2007, through January 20, 2008, she worked for and received $4,774.07 in wages from Faithful Nurses Inc., while also receiving $4,726.08 in time-loss compensation benefits from the Department.

¶9  While working these three jobs, Matthews received a total of twelve department payment orders and time-loss

---

[2] Matthews stopped working when she began experiencing severe headaches and her feet began swelling and shaking.

[3] According to Matthews, she stopped working for Bel Air because she still did not feel well.

compensation benefit checks. She signed and cashed each check, despite the payment orders' admonishment that she should not cash the checks if she had "returned to *any* type of work." AR at 246 (emphasis added). On six occasions between July 17, 2007, and January 28, 2008, the Department sent Matthews worker verification forms, none of which she returned as required.[4]

## II. PROCEDURE

¶10 Through a "cross-match" of Matthews' employment security and workers' compensation records in January 2008, the Department discovered that she had been working and earning wages while also receiving time-loss compensation benefits. After conducting an investigation, the Department determined that (1) it had overpaid Matthews time-loss compensation benefits during the periods that she had worked, from July 6, 2007, to January 20, 2008; and (2) she would have to reimburse the Department for these payments.

### A. Department's June 30, 2008 Order

¶11 On June 30, 2008, the Department issued an order (1) finding that Matthews had been overpaid time-loss compensation benefits during her three periods of unreported employment; and (2) demanding that she repay the actual amount of overpaid benefits, plus a statutory 50 percent penalty based on her "willful misrepresentation" of her employment status. The Department's order stated:

> WHEREAS, [Matthews] sustained an injury on 05/18/2006 while engaged in employment subject to the provisions of the Industrial Insurance laws, and

---

[4] Matthews later testified that she believed she was still entitled to time-loss compensation benefits because she was not working full time for the same wages she had been earning before her injury. She did not explain, however, her failure to complete and to return the required worker verification forms.

WHEREAS, *time-loss compensation benefits were paid upon [Matthews'] representation that she was not working and/or unable to work,* and

WHEREAS, an investigation reveals that [Matthews] was employed during the following periods during which time period time-loss benefits were *obtained by willful misrepresentation, omission, and/or concealment of a material fact* from the Department by [Matthews];

From 07/06/2007 through 08/26/2007 [Matthews] earned $5808.00[5] while working for Avalon Care Center. During the above period [Matthews] received time-loss benefits totaling $4551.04. During the above period [Matthews] was entitled to loss of earning power benefits of $0.00, resulting in an overpayment of $4551.04 for this time period.

From 09/16/2007 through 10/22/2007 [Matthews] earned $4530.16 while working for Bel Air Rehab and Specialty Center. During the above period [Matthews] received time-loss benefits totaling $3238.24. During the above period [Matthews] was entitled to loss of earning power benefits of $0.00, resulting in an overpayment of $3238.24 for this time period.

From 11/28/2007 through 01/20/2008 [Matthews] earned $4774.07 while working for Faithful Nurses. During the above period [Matthews] received time-loss benefits totaling $4726.08. During the above period [Matthews] was entitled to loss of earning power benefits of $1204.04, resulting in an overpayment of $3522.04 for this time period.

THEREFORE, *it is ordered that [Matthews] shall refund to the Department of Labor and Industries the overpayment of $11,311.32 plus a 50 [percent] penalty of $5,655.66 pursuant to RCW 51.32.240,* in a total amount of $16,966.98.

---

[5] Although the Department originally determined that Matthews had received $5,808.00 in wages from Avalon, the Industrial Appeals Judge and the Board later determined that Matthews had received $6,075.20. The parties do not dispute this finding. Nor does it affect our resolution of the issues in this appeal.

Formal demand is hereby made for repayment in the amount of $16,966.98 on the basis that *such payments have been induced by willful misrepresentation.*

AR at 62 (emphasis added).[6]

### B. Appeal to Board

¶12 Matthews filed a notice of appeal with the Board. The Board scheduled a hearing before an Industrial Appeals Judge (IAJ).

#### 1. Industrial Appeals Judge hearing

¶13 At the IAJ hearing, the Department presented evidence that (1) Matthews was not entitled to time-loss compensation benefits during any of the periods that she was "able to work" or had actually been "working"; (2) the Department had paid Matthews time-loss compensation benefits from July 6, 2007, to January 20, 2008, during the periods that she had worked for Avalon, Bel Air, and Faithful Nurses; and (3) Matthews had willfully misrepresented her employment in order to continue receiving such benefits from the Department. AR at 346.

¶14 On rebuttal, Matthews (1) admitted that she had received time-loss compensation benefits during the periods that she had worked for Avalon, Bel Air, and Faithful Nurses; and (2) testified that she had believed she was still entitled to collect benefits because she was not working "full-time" and did not feel healthy enough to return to her former work routine. Matthews' husband testified that he needed to help her fill out "paperwork" and applications because she had limited English skills and because she was not yet operating at "100 percent." AR at 406. Despite having the opportunity, Matthews presented no medical or vocational testimony about her ability or inability to work.

---

[6] After Matthews protested this order, the Department issued a second order on July 22, 2008, affirming its June 30 order. This second order, however, does not affect the issues before us in this appeal.

¶15 The IAJ issued a proposed decision and order that, similar to the Department's June 30, 2008 order, listed "willful misrepresentation" to support the statutory 50 percent penalty, which required a higher standard of proof than that required to prove the underlying overpayment:

> The Department has the burden to prove the overpayment *and then the higher standard of willful misrepresentation* in this case in order for the Department order to be affirmed.

AR at 56 (emphasis added). The IAJ first concluded that the Department was correct in determining that it had overpaid Matthews time-loss compensation benefits during the three periods that she had worked[7] without reporting her earnings to the Department and that "Matthews' total reimbursement to the Department due to overpayment of time-loss compensation is correct at $11,311.32."[8] AR at 57.

¶16 Having determined the basic question of whether Matthews had received overpayment of benefits, the IAJ then turned to "[t]he final question" of "whether Ms. Matthews willfully misrepresented her work situation to the Department so that they are entitled to the penalty."[9] AR at 57. The IAJ answered this question in the negative, concluding that (1) the Department was not correct in its determination that Matthews had engaged in "willful misrepresentation" under RCW 51.32.240(5) between July 6,

---

[7] The IAJ entered essentially the same three separate earnings findings and benefits overpayment findings that the Department had previously entered. We note, however, that the IAJ expressly refused to consider overpayments that had occurred outside the time periods designated in the Department's June 30 order, despite evidence of new "additional wage information" that Matthews had also worked before September 16 for Bel Air and had worked for Faithful Nurses after January 20. AR at 56. Recognizing its limited scope of review, the IAJ stated, "*I will not expand the Board's jurisdiction* to include this time period because it *was not addressed by the Department in the order.*" AR at 56 (emphasis added).

[8] This amount represents Matthews' total benefits overpayment *without* the Department's additional 50 percent penalty.

[9] In so doing, the IAJ noted that the legislature had amended the Industrial Insurance Act, Title 51 RCW, in 2004, "to allow the Department to recoup the cost of benefits *plus* a penalty if the benefits were obtained by means of willful misrepresentation." AR at 57 (emphasis added).

2007 and January 20, 2008; and (2) therefore, "[t]he *penalty assessment* [was] incorrect." AR at 58 (emphasis added). The IAJ reversed the Department order and "remanded to affirm the repayment portion of the order without any penalty." AR at 58.

### 2. Board review and final decision

¶17 Matthews and the Department both petitioned the three-member Board to review the IAJ's decision. Matthews argued that the IAJ had "exceeded the Board's jurisdiction" by ordering overpayment reimbursement outside the "willful misrepresentation" provision of RCW 51.32.240(5) because "the only issue under appeal was whether the Department was correct in charging [her] with willful misrepresentation." AR at 21. The Department asked the Board to reverse the IAJ's findings of fact and conclusions of law that Matthews had not engaged in willful misrepresentation and for reinstatement of the 50 percent penalty.

¶18 The Board granted review to both parties and affirmed the IAJ's rulings on both the underlying benefits overpayment reimbursement and the Department's failure to prove willful misrepresentation to support the 50 percent penalty assessment.[10] In so doing, the Board specifically concluded:

> Between July 6, 2007 and August 26, 2007; September 16, 2007 and October 22, 2007; and November 28, 2007 through January 20, 2008, Ms. Matthews was *overpaid time-loss compensation benefits* which must be reimbursed to the Department of Labor and Industries.

AR at 10 (emphasis added). The Board reversed the Department's assessment of the 50 percent penalty, and it remanded

---

[10] The Board's final decision and order also noted one error in the IAJ's proposed decision and order "regarding the determination of the overpayment"; thus, the Board modified its final conclusion of law to direct the Department to issue an order on remand correctly determining the overpayment amount. AR at 9. This discrepancy, however, does not affect our analysis here.

to the Department to eliminate the penalty, to modify Matthews' earnings amount from Avalon to reflect a higher amount of wages earned, and "to take such further action as may be indicated by the facts and the law." AR at 10.

## C. Appeal to Superior Court

¶19 Matthews appealed the Board's decision to the superior court, arguing that "the only issue under appeal" was the Department's original willful misrepresentation determination and that the Board had "exceeded its jurisdiction" by "entering findings and conclusions related to entitlement to time-loss compensation benefits" after finding that the Department had incorrectly based its overpayment recoupment order on the nonproven willful misrepresentation by Matthews. Clerk's Papers at 16. The superior court affirmed the Board's final decision in its entirety.

¶20 Matthews appeals.

## ANALYSIS

### I. JURISDICTION; SCOPE OF REVIEW

¶21 As a threshold issue, Matthews first argues that the superior court and the Board lacked subject matter jurisdiction to assess her overpayment on a ground other than willful misrepresentation and to enter findings and conclusions that she was not entitled to time-loss compensation benefits on the ground that she was not a "temporarily and totally disabled" worker, because the Department had not previously determined these issues. Br. of Appellant at 9. The Department responds that this issue relates to the Board's "scope of review," not to subject matter jurisdiction, and that the superior court and the Board did not exceed their respective scopes of review. Br. of Resp't at 16. We agree with the Department.

## A. Jurisdiction

¶22 The Industrial Insurance Act[11] confers purely an "appellate function" on the Board and the courts in workers' compensation cases under Title 51 RCW. *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 171, 937 P.2d 565 (1997). The Department enjoys broad subject matter jurisdiction to adjudicate all claims for workers' compensation benefits, including recoupment of overpayments. *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539-40, 886 P.2d 189 (1994).[12] The Board also has broad subject matter jurisdiction, including express statutory authorization, to review the Department's actions.[13] RCW 51.52.050(2)(a); *Shafer v. Dep't of Labor & Indus.*, 140 Wn. App. 1, 7, 159 P.3d 473 (2007), *aff'd*, 166 Wn.2d 710, 213 P.3d 591 (2009). Similarly, the superior courts have subject matter jurisdiction and express statutory authorization to review appeals

---

[11] Title 51 RCW.

[12] "[T]he Department has 'original and exclusive jurisdiction, in all cases where claims are presented, to determine the mixed question of law and fact as to whether a compensable injury has occurred.'" *Marley*, 125 Wn.2d at 539-40 (quoting *Abraham v. Dep't of Labor & Indus.*, 178 Wash. 160, 163, 34 P.2d 457 (1934)); *see also Weyerhaeuser Co. v. Bradshaw*, 82 Wn. App. 277, 281, 918 P.2d 933 (1996).

[13] The Board issued a significant decision discussing *Marley* and the difference between the Board's "subject matter jurisdiction" and its "scope of review." *In re Houle*, No. 00 11628, 2001 WL 395827, at *3, 2001 WA Wrk. Comp. LEXIS 26 (Wash. Bd. of Indus. Ins. Appeals Feb. 22, 2001). According to the Board, the phrase "scope of review" serves to limit issues that the Board has authority to consider, restricting the Board's review to matters that the Department has already determined. *In re Houle*, 2001 WL 395827, at *3, 2001 WA Wrk. Comp. LEXIS 26. If the Board exceeds this scope of review by resolving issues not properly before it, it commits an "error of law"; such error, however, is not jurisdictional and does not deprive the Board of subject matter jurisdiction. *In re Houle*, 2001 WL 395827, at *3, 2001 WA Wrk. Comp. LEXIS 26.

The practical significance of this characterization is that unappealed errors relating to scope of review are still subject to res judicata; whereas errors relating to subject matter jurisdiction are not. *In re Houle*, 2001 WL 395827, at *3, 2001 WA Wrk. Comp. LEXIS 26. Although the Board's significant decisions are not binding on our court, we consider them persuasive authority. *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005). Here, we agree with and accept the Board's analysis on subject matter jurisdiction.

from board decisions, including appeals from overpayment recoupment orders alleging willful misrepresentation. RCW 51.52.050(2)(b)-(c), .110. We hold that the Board and the Superior Court had subject matter jurisdiction over the controversy at issue in Matthews' case.

## B. Scope of Review

¶23 The Board hears appeals de novo, "reviewing the *specific* Department action" from which the parties appealed. *Kingery*, 132 Wn.2d at 171 (emphasis added). The Board may consider and decide questions that are "fixed by the order from which the appeal was taken as limited by the issues raised by the notice of appeal." *Lenk v. Dep't of Labor & Indus.*, 3 Wn. App. 977, 982, 478 P.2d 761 (1970) (citation omitted).

¶24 A superior court also reviews the Board's action de novo; it relies on the certified Board record and can decide only those matters that the administrative tribunals previously determined. RCW 51.52.115; *Shufeldt v. Dep't of Labor & Indus.*, 57 Wn.2d 758, 760, 359 P.2d 495 (1961); *Malang v. Dep't of Labor & Indus.*, 139 Wn. App. 677, 683, 162 P.3d 450 (2007). A superior court's scope of review is further limited to such issues of law or fact as were "*properly* included in the notice of appeal to the [B]oard, or in the complete record of the proceedings before the [B]oard." RCW 51.52.115 (emphasis added). Thus, a superior court's authority to determine an issue in a workers' compensation case "depends upon whether or not the Board properly addressed that issue." *Hanquet v. Dep't of Labor & Indus.*, 75 Wn. App. 657, 663-64, 879 P.2d 326 (1994), *review denied*, 125 Wn.2d 1019 (1995).

¶25 To ascertain whether the Board and the superior court acted within their proper scopes of review here, we first look to the provisions of the underlying Department order that Matthews appealed to the Board. *Lenk*, 3 Wn. App. at 982. In its June 30, 2008 decision, the Department found

that (1) it had paid Matthews time-loss compensation benefits based "upon [her] representation that she was not working and/or unable to work"; (2) she had obtained time-loss compensation benefits "by willful misrepresentation" during periods of time that she was employed; (3) during these periods she had received "overpayment[s]" of $4,551.04 ("[f]rom 07/06/2007 through 08/26/2007"), $3,238.24 ("[f]rom 09/16/2007 through 10/22/2007"), and $3,522.04 ("[f]rom 11/28/2007 through 01/20/2008"); and (4) she must "refund to the Department . . . the [combined] overpayment of $11,311.32 plus a 50 [percent] penalty of $5,655.66 pursuant to RCW 51.32.240, in a total amount of $16,966.98." AR at 61-62.

¶26 Matthews phrased her notice of appeal in very general terms, not limiting it to review of only the Department's "willful misrepresentation" finding and its corresponding 50 percent penalty, but also including the Department's basic denial of time-loss compensation benefits during the three above periods when she had been employed:

> [Matthews] appeals from the [Department's] orders . . . on the grounds that said orders are unjust and unlawful in that [Matthews] is entitled to acceptance of denied conditions, reopening of claim, further treatment, *time loss benefits,* . . . loss of earning power, vocational rehabilitation, increased permanent partial disability, and/or permanent total disability.

AR at 66 (emphasis added). But contrary to Matthews' contention, by the terms of her own notice of appeal, the Board's scope of review was not limited to the question of willful misrepresentation;[14] rather, it also included whether she was entitled to time-loss compensation benefits while she was working and earning unreported wages, which was also a component of the Department's overpayment finding. Nor was the superior court's scope of review

---

[14] Despite finding that the Department had not proved willful misrepresentation, the IAJ determined that Matthews had been overpaid time-loss compensation benefits in the amount of $11,311.32, which she needed to repay to the Department.

similarly limited, because it could review any issues that the Board had "properly addressed." *Hanquet*, 75 Wn. App. at 663-64.

¶27 We hold that neither the Board nor the superior court (1) exceeded the appropriate scope of review or (2) erred in reversing the Department's willful misrepresentation finding while leaving its underlying benefits overpayment finding intact.

## II. OVERPAYMENT OF TIME-LOSS BENEFITS DURING EMPLOYMENT

¶28 Matthews argues primarily that the Board and the superior court lacked authority to review her time-loss overpayments, beyond the narrow issue of the Department's willful-misrepresentation finding. She also assigns error to the superior court's and the Board's "concluding that [she] was overpaid time loss compensation because the evidence presented was only regarding the issue of willful misrepresentation and not [temporary] total disability." Br. of Appellant at 3. In our view, although she focuses on the "willful misrepresentation" component, she also challenges the Department's basic conclusion that she was overpaid time-loss compensation benefits. Again, her argument fails.

## A. Standard of Review

¶29 When reviewing a superior court judgment in a worker's compensation case, our " 'review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.' " *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999) (quoting *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996)); *accord Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009).

¶30 Matthews' nonentitlement to time-loss compensation benefits was an essential element that the Department needed to prove under RCW 51.32.240 in order to

recoup the benefits it had overpaid Matthews while she was employed, without reporting her employment as required. Although the Department did not prove that Matthews' overpayment *resulted from her willful misrepresentation*, it did prove that she was overpaid benefits to which she was not entitled under the law. Matthews does not challenge on appeal any of the IAJ's proposed findings of fact that she was overpaid specific amounts during her three periods of unreported employment. Nor does she assign error to the Board's or the superior court's adoption of these findings of fact. Thus, these findings are verities on appeal. *Willoughby v. Dep't of Labor & Indus.*, 147 Wn.2d 725, 733 n.6, 57 P.3d 611 (2002).

¶31 These unchallenged findings support the Board's and superior court's findings, which were consistent with the Department's original findings of overpayment amounts for the following periods of unreported employment: $4,551.04 for the period "[f]rom 07/06/2007 through 08/26/2007," $3,238.24 for the period "[f]rom 09/16/2007 through 10/22/2007," and $3,522.04 for the period "[f]rom 11/28/2007 through 01/20/2008." AR at 61.

### B. No "Entitlement to Time-Loss Compensation"

¶32 " 'Time loss' is workmen's compensation parlance for temporary total disability . . . compensation, a wage replacement benefit paid under RCW 51.32.090." *Jacobsen v. Dep't of Labor & Indus.*, 127 Wn. App. 384, 386 n.1, 110 P.3d 253 (2005). Under RCW 51.32.090(3)(a), a plaintiff's right to time-loss compensation benefits terminates when her earning power, "*at any kind of work*, is restored to that existing at the time of the occurrence of the injury." (Emphasis added); *see also Hunter v. Dep't of Labor & Indus.*, 43 Wn.2d 696, 699-701, 263 P.2d 586 (1953). Our courts have held that to continue receiving time-loss compensation benefits, a plaintiff must be "temporarily incapable of performing *generally available work of any kind on a reasonably continuous*

*basis.*"[15] *Hunter v. Bethel Sch. Dist.*, 71 Wn. App. 501, 510, 859 P.2d 652 (1993) (emphasis added).

¶33 After her injury, Matthews reentered the work force, performing work similar to that which she had performed before her injury. She testified that her injury prevented her from holding nursing jobs longer than one to two months; but the Department proved below and maintains on appeal that her three temporary jobs were gainful employment on a "reasonabl[y] continuous" basis,[16] Br. of Resp't at 20, resulting in Matthews' receiving benefits to which she was not entitled. *See* RCW 51.32.240(1)(a). We agree. Matthews did not contest below the facts of her employment or that she had simultaneously received both time-loss compensation benefits and wages; nor does she contest them on appeal.

¶34 RCW 51.32.090 provides, in part:

(1) When the total disability is only temporary, the schedule of payments contained in RCW 51.32.060 (1) and (2) shall apply, *so long as the total disability continues.*

. . . .

(3)(a) *As soon as recovery is so complete that the present earning power of the worker, at any kind of work, is restored to that existing at the time of the occurrence of the injury, the payments shall cease.* If and so long as the present earning

---

[15] A plaintiff, however, may be temporarily totally disabled, "*in spite of sporadic earnings*, if his physical disability . . . is such as to disqualify him from regular employment in the labor market." *Fochtman v. Dep't of Labor & Indus.*, 7 Wn. App. 286, 294, 499 P.2d 255 (1972); *see also Kuhnle v. Dep't of Labor & Indus.*, 12 Wn.2d 191, 197, 120 P.2d 1003 (1942). Such is not the case here, where Matthews worked at three successive jobs over a period of months.

[16] In addition to the unchallenged findings and clear evidence in the record that Matthews was, indeed, working, she presented no medical or vocational testimony to prove her inability to work. *Spring v. Dep't of Labor & Indus.*, 96 Wn.2d 914, 918, 640 P.2d 1 (1982); *see also Weinheimer v. Dep't of Labor & Indus.*, 8 Wn.2d 14, 17, 111 P.2d 221 (1941); *Fochtman*, 7 Wn. App. at 295-96 (plaintiff may rely on vocational testimony to prove total permanent disability but lay witness testimony alone insufficient). Matthews acknowledges this requirement but argues that because the Department had the burden of proof on the willful misrepresentation claim, she did not have the ability or incentive to litigate her inability to work fully.

power is only partially restored, the payments shall [be adjusted according to statutory formulae].

(Emphasis added.) According to the Department, until the worker's compensation claimant, a medical provider, or a vocational rehabilitation counselor informs the Department that the claimant has returned to work, the law requires the Department to provide the claimant with time-loss compensation benefits. Thus, when Matthews failed to inform the Department that she had returned to work for three sequential periods, the Department continued to pay her time-loss compensation benefits in the same amount to which she had been entitled when she had been earlier injured and unable to work. We hold that the Department proved the overpayments to Matthews, essentially in the amounts found and not challenged, subject to the Board's remand for readjustment.

## C. Recoupment

¶35  RCW 51.32.240 allows the Department to recoup overpayments based on several statutory grounds, including "willful misrepresentation" and "innocent misrepresentation." Rather than treating these grounds as one basis for recovery or as overlapping multiple bases for recovery, the statute lists willful misrepresentation and innocent misrepresentation separately under different subsections (with each containing a different statute of limitations):

> (1)(a) Whenever any payment of benefits under this title is made because of clerical error, mistake of identity, *innocent misrepresentation* by or on behalf of the recipient . . . all *not induced by willful misrepresentation*, the recipient thereof shall repay it and recoupment may be made from any future payments due to the recipient. . . . The department . . . must make claim for such repayment or recoupment *within one year of the making of any such payment* or it will be deemed any claim therefor has been waived.
>
> . . . .

> (5)(a) Whenever any payment of benefits under this title has been *induced by willful misrepresentation* the recipient thereof shall repay any such payment together with a penalty of fifty percent of the total of any such payments and the amount of such total sum may be recouped from any future payments due to the recipient. . . . Such repayment or recoupment must be demanded or ordered *within three years of the discovery of the willful misrepresentation.*

RCW 51.32.240 (emphasis added).

¶36 Without contest from Matthews, the Department proved that she had "consistently and regularly" submitted her worker verification forms, verifying that she was not working, until shortly before she started working for Avalon. AR at 340. At this point, she stopped returning these forms; and she made no timely attempt otherwise to inform the Department that she had returned to work and was earning wages. Moreover, despite the warning on her time-loss compensation checks to report any earned wages immediately, she did not do so and instead cashed the checks. Matthews' testimony—that she believed she was entitled to continue to receive these benefits because she had not returned to her regular job full time without interruption—apparently persuaded the IAJ to find that she had not received these overpayments by "willful misrepresentation." AR at 58.

¶37 Nevertheless, the record shows that the Department continued to make these payments to Matthews while she was employed because she did not notify the Department of her employment and receipt of wages. Because her lack of notice caused the time-loss benefit payments to continue after they should have stopped or been reduced based on partial disability, the Department has shown "innocent misrepresentation" of the facts of her employment under the statute's plain language.[17] We hold, therefore, that the Department proved the overpayments and that these facts

---

[17] We note that nothing in the statute requires the Department to allege specifically "innocent misrepresentation" when it failed to prove "willful misrep-

support the Board and the superior court's findings of over-payments that Matthews must repay to the Department.

¶38 We affirm the superior court's affirmance of the Board's decision and order and remand for determination of the amount of overpayment that Matthews must reimburse the Department.

WORSWICK, C.J., and QUINN-BRINTNALL, J., concur.

Review denied at 176 Wn.2d 1026 (2013).

resentation" under RCW 51.32.240(5), which subsection expressly provides that "failure to disclose a work-type activity must be willful in order for a [willful] misrepresentation to have occurred." RCW 51.32.240(5)(d); *see also* RCW 51.32-.240(5)(b). The statute does not, however, provide a similar explanation of the term "innocent misrepresentation," which, unlike "willful misrepresentation," does not carry with it a 50 percent penalty.