IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| CHUNYK & CONLEY/QUAD C; formerly dba QUAD-C HEALTH CARE CENTERS, | No. 49087-1-II |
| Appellants, | |
| v. | |
| PATTI C. BOETTGER; WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Chunyk & Conley/Quad C (Quad C) appeals the jury's verdict in favor of Patti Boettger, finding that the Board of Industrial Insurance Appeals (the Board) was correct when it decided that Boettger was a temporarily totally disabled worker from October 24, 2006 through September 27, 2010. Quad C argues that the trial court erred when it (1) failed to admit the verdict form from a previous trial finding Boettger was not temporarily totally disabled during an earlier time period, (2) failed to instruct the jury about the determination from the prior verdict, (3) failed to amend the Board's findings of fact to include the determination from the prior verdict, and (4) failed to vacate the jury's verdict.

We hold that the trial court did not err. Accordingly, we affirm.

FACTS

A.    THE INCIDENT

On January 22, 1998, Boettger was working as a nurse restorative coordinator at a facility owned by Quad C. She hurt her back when a patient collapsed while she was helping the patient

ambulate. Boettger felt a sharp pain in her back and leg. After the incident, Boettger continued to work with several physical restrictions.

In 2004, Boettger left her job and had low back surgery on multiple levels. She was not able to return to work after the surgery, and since then has not applied for any work. In August 2006, a job analysis was conducted for Boettger, and she was offered a job as a restorative coordinator at a facility not owned by Quad C. Boettger did not accept the job.

B.      AUGUST 19, 2006 TO OCTOBER 23, 2006 CLAIM

Boettger made a claim with the Department of Labor and Industries (the Department) for time-loss benefits from August 19, 2006 through October 23, 2006. In 2009, a jury found that Boettger was not temporarily totally disabled during that period. Therefore, Boettger was not entitled to any time-loss benefits. This 2009 verdict was not appealed.

C.      OCTOBER 24, 2006 TO SEPTEMBER 27, 2010 CLAIM

In 2012, the Department issued an order finding that Boettger was temporarily totally disabled and directed Quad C to pay time-loss benefits to Boettger for the period from October 24, 2006 to September 27, 2010. Quad C appealed the order to the Board and a hearing was held before an industrial appeals judge (IAJ) in 2013.

        1.      Dr. Williamson-Kirkland

At the hearing, Quad C presented testimony from Dr. Williamson-Kirkland, who performed an independent medical examination of Boettger on November 8, 2006. The examination showed that Boettger's sciatic notches and hips were not hurting, her nerves were not tight, she had vague sensory loss in her entire right leg, she had normal strength, and she could

walk without a limp. Dr. Williamson-Kirkland believed that Boettger "demonstrate[d] a lot more chronic pain behavior than probably necessary from the pain in her back." Clerk's Papers (CP) at 270. He diagnosed Boettger with chronic degenerative disks at multiple levels, excessive pain behavior and disability conviction, partial blindness, and depression.

Dr. Williamson-Kirkland testified that he did not believe that Boettger was unable to work because of her back, and stated that she could do light sedentary work based on her ability to do such work around the house. He also believed that Boettger's depression did not prevent her from working. Boettger's most disabling conditions were her vision, abdominal pain, chronic obstructive pulmonary disease, and other reasons, but her back pain was stable.

2.      Dr. Schneider

Quad C also presented testimony from Dr. Schneider, a psychiatric specialist who examined Boettger on September 20, 2006. Dr. Schneider diagnosed Boettger with "major depressive disorder" and "pain disorder with psychological factors and a general medical condition," both causally related to the January 22, 1998 industrial accident. CP at 357. Dr. Schneider reviewed the job analysis done in 2006 for Boettger and concluded that she could perform the job on a full-time basis from a psychiatric standpoint. Dr. Schneider also concluded that Boettger could work while getting further treatment for six to nine months.

3.      Dr. McManus

Dr. McManus, a physician who provided treatment to Boettger until January 29, 2007, also testified. Dr. McManus testified that Boettger suffered from chronic lower back pain, had a limited range of motion, and had the most pain with extension. He also testified that he evaluated

Boettger's physical capabilities in August 2006, and they were restricted. At that time, Boettger was limited to standing 30 minutes per hour, two hours total per 8-hour day; limited to walking 30 minutes per hour, 2 hours total per 8-hour day; limited in the amount of weight she could push, pull, and carry; could occasionally and seldom bend, squat, kneel, and reach below the waist; could not drive, climb a ladder, or crawl; and was limited to work no greater than four hours a day, five days a week. These restrictions should have continued past October 2006, unless they were amended based on new information.

Dr. McManus agreed that Boettger could work from a physical standpoint as a restorative coordinator on a part-time basis for four hours a day, five days a week. Dr. McManus also agreed that Boettger was at maximum medical improvement and had a "Category 3 permanent partial impairment of the dorsal, lumbar, and lumbosacral spine." CP at 506.

Ultimately, Dr. McManus testified that Boettger suffered from chronic lower back pain when he last saw her, had permanent work restrictions related to her lower back, and that she had "permanent conditions that were not expected to improve" and "may progress or worsen with time." CP at 507-508. But he deferred to Dr. Pearson regarding Boettger's mental health treatment and permanent work restrictions related to her mental health.

4. Dr. Pearson

Dr. Pearson testified that he was Boettger's treating psychiatrist during the October 24, 2006 to September 27, 2010 period. He first saw her in August 2006, when she was suicidal. Dr.

Pearson diagnosed Boettger with major depressive disorder[1] and pain disorder, and testified that both disorders existed from October 24, 2006 to September 27, 2010. He also testified that Boettger's depression "wax and waned" over the years and that "on a more-probable-than-not basis, prevent[ed] her from obtaining and performing reasonably continuous work" and "full-time work." CP at 522, 527. She had never "recovered enough or reached a point of stability long enough to be able to obtain and perform reasonably continuous full-time work." CP at 528.

Dr. Pearson stated that Boettger's pain disorder also impacted her ability to work and prevented her from reasonably continuous full-time work. Pain makes depression worse and depression also makes pain worse. And while Boettger's depression seemed to be improving from October 2006 to the date she testified, Boettger's symptoms fluctuated. Dr. Pearson believed that "on balance they're really no better [. . . t]hey're probably worse at some times[,]" and that her day-to-day functionality had decreased. CP at 551. From a psychiatric standpoint, Dr. Pearson testified that on a more-probable-than-not basis, Boettger could not go back to work again.

5.     Patti Boettger

Boettger also testified. She worked as a nurse restorative coordinator when she injured her leg and back on January 22, 1998. She continued to work, but the injury influenced her to change her work schedule and duties. Boettger eventually had surgery on her back. She was not able to return to work after surgery. After the surgery, she could not stand up straight, changed positions when sitting because of pain, had to stop driving, could only sleep for two hours at a time at most,

---

[1] The first indicators of Boettger's depression appeared in 1999 and due to the many years that had gone by without receiving treatment, "it was very likely that her depression had become chronic and might be resistant to treatment." CP at 531.

and had not had any pain free days. And in regards to her mental health, Boettger's mind wandered a lot and she cried often. Boettger has never felt well enough from a physical or mental health standpoint to return to work.

6.      Law of the Case Argument

At the end of the hearing, Quad C argued that the verdict from 2009, covering the period from August 19, 2006 to October 23, 2006, was the law of the case and sought to "submit a copy of that verdict and findings of fact and judgment on the verdict for the court's education." CP at 367. The IAJ stated:

> I think, that the law of the case might be that, as indicated, that there was a previous judgment regarding a previous period of time-loss. And, I think, I can take judicial notice of what happened in the superior court case, but I am not going to make that an exhibit, because I don't think that would be appropriate.

CP at 369. Quad C then stated, "It should be part of the file. I don't mean to make it an exhibit to some testimony." CP at 369. The IAJ ultimately concluded:

> Well, I can, like I said, I can make reference to the jurisdictional history, which acknowledges there was a verdict and then the Department's order follows that, which applies the verdict.
>
> But in terms of whether it's the law of the case, and whether that applies to this, I am just going to have to sort that out when I get to the proposed decision and order, and based on my understanding of what the law is and what the appeal covers and that sort of thing.

CP at 369-70.

7.      Board Determination

The IAJ issued a proposed decision and order affirming the Department's order. In the section regarding procedural and evidentiary matters, the IAJ noted that Quad C provided a copy

of the 2009 verdict form, which found that Boettger was not temporarily totally disabled so was

not entitled to time-loss benefits for the period of August 19, 2006 to October 23, 2006, and that

the 2009 verdict was reflected in the jurisdictional history stipulated to by the parties. But the IAJ

stated that the verdict form was not made an exhibit and was not the law of the case.

Quad C then filed a petition for review of the proposed decision and order, and the Board

issued an order that affirmed the Department's order. The Board found that

> 1.  On November 19, 2012, an industrial appeals judge certified that the parties
> agreed to include the Jurisdictional History in the Board record solely for
> jurisdictional purposes.

CP 126. The Board also found that Boettger sustained an industrial injury to her low back on

January 22, 1998, and as a proximate cause of that injury, she "was unable to obtain or perform

gainful employment on a reasonably continuous basis from October 24, 2006, through September

27, 2010, inclusive." CP at 127. The Board concluded that Boettger was a temporarily totally

disabled worker from October 24, 2006 through September 27, 2010. Quad C appealed the

Board's decision to the superior court.

D.    PRETRIAL

Before trial, Quad C brought a motion in limine to admit as an exhibit the 2009 verdict

form that found Boettger was not temporarily totally disabled from August 19, 2006 to October

23, 2006. Quad C argued that the verdict form was presented to the Board but ignored, and that

because it was the law of the case and a part of the jurisdictional history of the case, it was improper

to exclude. The trial court denied admission of the 2009 verdict form, reasoning that the 2009

verdict form was irrelevant because it dealt with a different time period, that its prejudicial effect outweighed its probative value under ER 403, and that it was not the law of the case.

Quad C also proposed three jury instructions—5A, 6, and 6A—that related to the 2009 verdict on Boettger's disability from August 19, 2006 to October 23, 2006.[2]  The trial court declined to give any of Quad C's three proposed instructions.

---

[2] Quad C's proposed instruction 5A stated that "[a] finding of fact has been made that Ms. Boettger was not temporarily totally disabled from August 19, 2006 until October 23, 2006."  CP at 661.  Quad C's proposed instruction 6 stated:

> A decision rendered on a prior appeal, whether right or wrong, becomes the law of the case.  That decision remains the law of the case unless there is a substantial change in evidence presented in a subsequent appeal.

> This appeal is the second appeal between these two parties.  In the first appeal, a jury found that the defendant, Patti Boettger, was not temporarily totally disabled from August 19, 2006, through October 23, 2006, and thus was not entitled to receive time-loss benefits.  Therefore, to uphold the Board of Industrial Insurance Appeals' decision in this appeal, the defendant must have presented substantial evidence that her condition has changed since October 23, 2006.

CP at 662.  And Quad C's proposed instruction 6A stated:

> A decision rendered on a prior appeal, whether right or wrong, becomes the law of the case.  That decision remains the law of the case unless there is a substantial change in evidence presented in a subsequent appeal.

> It has already been determined that Patti Boettger was not temporarily totally disabled from August 19, 2006 through October 23, 2006, and thus not entitled to receive time-loss benefits.

CP at 663.

8

E.     TRIAL

At trial, the certified board record was read to the jury.  The trial court then instructed the jury and the jury deliberated.  After deliberation, the jury returned a verdict that the Board was correct in deciding that Boettger was a temporarily totally disabled worker from October 24, 2006 to September 27, 2010.

F.     POST TRIAL

After trial, Quad C filed a motion to vacate the jury verdict and for a new trial under CR 59.  Quad C argued that no evidence or reasonable inference from the evidence justified the verdict and that the 2009 verdict form should have been admitted or its proposed instructions 5A, 6, or 6A should have been given.  The trial court denied Quad C's motion.  Quad C appeals.

ANALYSIS

A.     STANDARD OF REVIEW

Under the Industrial Insurance Act (the Act), we review the trial court's decision, not the Board's order.  RCW 51.52.140; *Malang v. Dep't of Labor & Indus.*, 139 Wn. App. 677, 683, 162 P.3d 450 (2007).  And we review the trial court's decision in the same way we do other civil cases.  RCW 51.52.140; *Mason v. Georgia-Pac. Corp.*, 166 Wn. App. 859, 863, 271 P.3d 381, *review denied*, 174 Wn.2d 1015 (2012).  On appeal to the trial court, the Board's decision is prima facie correct, and a party challenging the decision must support its challenge by a preponderance of the evidence.  RCW 51.52.115; *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

B.      ADMISSION OF 2009 VERDICT FORM

We review a trial court's evidentiary rulings for an abuse of discretion.  *Lewis v. Simpson Timber Co*., 145 Wn. App. 302, 328, 189 P.3d 178 (2008).  The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).  If the trial court relies on unsupported facts or applies the wrong legal standard, its decision is based on untenable grounds or untenable reasons.  *Id*.

1.      Law of the Case Argument

Quad C argues that the trial court erred when it failed to admit the 2009 verdict form because it was the law of the case.  We disagree.

Under the law of the case doctrine, "the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are 'authoritatively overruled.'"  *Greene v. Rothschild*, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)).  "In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation."  *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005).

In this case, Quad C argues that Boettger's two causes of action emanate from the same facts, same injuries, and same evidence, but admits that "this action/appeal originates from a different underlying cause of action."  Br. of Appellant at 18.  The fact that this case is not a part of the same cause of action that issued the 2009 verdict is decisive because the law of the case

10

doctrine applies only to "subsequent stages of the same litigation." *Id*. The litigation here involves the issue of whether Boettger was temporarily totally disabled from October 24, 2006 to September 27, 2010, while the 2009 verdict involved litigation of whether Boettger was temporarily totally disabled from August 19, 2006 to October 23, 2006. Therefore, we hold that the trial court did not abuse its discretion when it found that the 2009 verdict was not the law of the case and denied admission of the 2009 verdict form.

    2.      Evidence Presented to the Board

Quad C also argues that the trial court erred when it failed to admit the 2009 verdict form because the Board was aware of the facts from that verdict. We disagree.

Under the Act, the trial court reviews a Board order de novo and its review is based solely on the evidence and testimony presented to the Board. RCW 51.52.115; *Stelter v. Dep't of Labor & Indus.*, 147 Wn.2d 702, 707, 57 P.3d 248 (2002); *Malang*, 139 Wn. App. at 683. The trial court "shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court." RCW 51.52.115.

While Quad C argues that the Board was aware of the fact that Boettger was found to not be temporarily totally disabled on October 23, 2006, Quad C never offered the 2009 verdict form into evidence.[3] The plain language of the Act states that the superior court shall not receive any

---

[3] Quad C did not offer the 2009 verdict form as an exhibit in the hearing before the IAJ. While Quad C argues that the IAJ took judicial notice of the prior verdict, the IAJ only stated that he could take judicial notice, not that he did or would do so.

evidence or testimony not offered before the Board or included in the filed Board record.[4]  RCW

51.52.115.  Therefore, we hold that the trial court did not abuse its discretion in excluding the

verdict form.

C.      JURY INSTRUCTIONS ABOUT THE 2009 VERDICT

Quad C argues that the trial court erred when it failed to instruct the jury about the 2009

verdict and that a jury had previously determined that Boettger was able to work from August 19,

2006 to October 23, 2006.  We disagree.

A trial court generally has discretion on whether to give a particular jury instruction.  *Clark

County v. McManus*, 185 Wn.2d 466, 470, 372 P.3d 764 (2016).  We review a trial court's refusal

to give a proposed jury instruction for an abuse of discretion.  *Chunyk & Conley/Quad-C v. Bray*,

156 Wn. App. 246, 252, 232 P.3d 564, *review denied*, 169 Wn.2d 1031 (2010).

Jury instructions are sufficient when they allow counsel to argue their theory of the case,

are not misleading, and, when read as a whole, properly inform the jury of the applicable law.

*Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002).  An instruction that is

misleading or contains an erroneous statement of the applicable law is reversible error only where

it prejudices a party.  *Id.*; *Thompson v. King Feed & Nutrition Serv., Inc.*, 153 Wn.2d 447, 453,

---

[4] And although Quad C argues that the Board considered the 2009 verdict form in rendering its decision, and therefore the verdict should have been presented to the jury for them to determine whether the Board correctly construed the law and found the facts, the Board's consideration of the verdict was limited to whether it was the law of the case.  In fact, in his proposed decision and order, the IAJ did not include the 2009 verdict in the section on evidence presented, and only referenced it in the section on procedural and evidentiary matters.  In that section, the IAJ ultimately concluded that the prior verdict was not the law of the case and the Board later affirmed the IAJ's evidentiary rulings.

105 P.3d 378 (2005). An error is prejudicial if it presumably affects the outcome of the trial. *Herring v. Dep't of Social & Health Servs.*, 81 Wn. App. 1, 23, 914 P.2d 67 (1996). Also, "[w]here the court submits a case to the jury, the court shall by instruction advise the jury of the exact findings of the board on each material issue before the court." RCW 51.52.115.

1. Proposed Instruction 5A

Here, the trial court declined to give Quad C's proposed jury instruction 5A. The proposed instructions stated that a finding of fact was made that Boettger was not temporarily totally disabled from August 19, 2006 to October 23, 2006. But this finding was not made by the Board in this case. Instead, it was made by a jury in a different case involving a prior time period. The jury was instructed in accordance with the findings of fact in this case as it related to the determination of Boettger's temporary total disability from October 24, 2006 to September 27, 2010. The 2009 verdict was not the law of the case as discussed above. Thus, the proposed instruction was improper.

2. Proposed Instructions 6 and 6A

The trial court also declined to give Quad C's proposed instructions 6 and 6A. The proposed instructions stated that Boettger was previously found to not be temporarily totally disabled from August 19, 2006 to October 23, 2006, that such a determination was the law of the case, and that Boettger had to show a substantial change in her condition in order to uphold the Board's order. However, as discussed above, the 2009 verdict involved a different time period and was not decided in the same litigation. Thus, it was not the law of the case. The proposed

instructions were erroneous statements of the applicable law. Therefore, we hold that the trial court did not abuse its discretion when it declined to give Quad C's proposed instructions 6 or 6A.

D.     AMENDMENT TO BOARD'S FINDINGS OF FACT

Quad C argues that the trial court erred when it failed to amend the Board's findings of fact to include the fact that Boettger was previously determined to not be temporarily totally disabled from August 19, 2006 to October 23, 2006.

Under RCW 51.52.115, "the court shall by instruction advise the jury of the exact findings of the board on each material issue." On review, the trial court may substitute its own findings and decision for the Board's only if it finds "'from a fair preponderance of credible evidence, that the Board's findings and decision are incorrect.'" *Ruse*, 138 Wn.2d at 5 (internal quotation marks omitted) (quoting *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)).

Here, Quad C argues that it was error to not supplement the Board's findings because the failure to do so ignored and deprived the jury of a material fact to Boettger's claim. However, RCW 51.52.115, states that the trial court shall instruct the jury on the *exact* findings of the Board. The Board in this case did not make a finding that Boettger was not temporarily totally disabled from August 19, 2006 to October 23, 2006. Therefore, we hold that the trial court did not err.[5]

---

[5] Quad C also argues that the Board and superior court should have included all historical facts in its findings of fact and relies on *In Re Mark A. Billings*, No. 70883, 1986 WL 31854 (Wash. Bd. Ind. Ins. Appeals July 30, 1986). However, the Board's significant decisions are not binding on this court and are only persuasive authority. *Matthews v. Dep't of Labor & Indus.*, 171 Wn. App. 477, 490 n.13, 288 P.3d 630 (2012), *review denied*, 176 Wn.2d 1026 (2013). Also, *Billings* is distinguishable from the case here because *Billings* involved the presumption of eligibility for time-loss benefits due to the issuance of such benefits before and after the disputed time period. No. 70883, 1986 WL 31854, at *1.

E.     DENIAL OF MOTION TO VACATE

Quad C argues that the trial court erred when it failed to vacate the jury's verdict. We disagree.

We review a trial court's decision on a motion to vacate for an abuse of discretion. *Landon v. Home Depot*, 191 Wn. App. 635, 639, 365 P.3d 752 (2015), *review denied*, 185 Wn.2d 1030 (2016). A trial court abuses its discretion when its decision is manifestly unreasonable, or is based on untenable grounds or untenable reasons. *Id.* at 640. A decision is based on untenable grounds or untenable reasons if the trial court applies an incorrect legal standard or relies on unsupported facts. *Id.*

Under CR 59(a)(7), a verdict may be vacated and a new trial granted when there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or the verdict is contrary to the law. "We evaluate whether substantial evidence supports the jury's verdict, viewing the evidence in the light most favorable to the nonmoving party." *Herriman v. May*, 142 Wn. App. 226, 232, 174 P.3d 156 (2007). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. *Ferencak v. Dep't of Labor & Indus.*, 142 Wn. App. 713, 719-20, 175 P.3d 1109 (2008), *aff'd*, *Kustura v. Dep't of Labor & Industries*, 169 Wn.2d 81 (2010). Inconsistencies within the evidence are matters which affect weight and credibility and are exclusively for the jury to decide. *Herriman*, 142 Wn. App. at 232. The trial court has no discretion to disturb a verdict within the range of the evidence. *Id.*

Under the Act, a claimant is temporarily totally disabled when he or she is "temporarily incapable of performing generally available work of any kind on a reasonably continuous basis."

*Hunter v. Bethel Sch. Dist. & Educ. Serv. Dist. No. 121*, 71 Wn. App. 501, 510, 859 P.2d 652 (1993), *review denied*, 123 Wn.2d 1031 (1994). A claimant is not totally disabled solely because she is unable to return to her former occupation. *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 299, 354 P.3d 924 (2015).

Here, Quad C brought a motion to vacate the jury's verdict and for a new trial, arguing that no evidence was presented to show that Boettger could not work part time from October 24, 2006 to September 27, 2010. But the relevant inquiry is whether Boettger was able to work on a reasonably continuous basis from October 24, 2006 to September 27, 2010, not whether Boettger was able to work on a full-time or part-time basis. Substantial evidence was presented to show that Boettger could not work on a reasonably continuous basis during the period from October 24, 2006 to September 27, 2010.

From a physical standpoint, Dr. McManus testified that on January 29, 2007, Boettger still suffered from chronic lower back pain, had a limited range of motion, and had the most pain with extension. He also testified that Boettger had restricted physical capabilities. Boettger was limited in her ability to stand, walk, push, pull, carry, bend, squat, kneel, and reach below the waist; could not drive, climb a ladder, or crawl; and could not work more than four hours a day, five days a week. These restrictions were expected to continue past October 2006, and Dr. McManus stated that Boettger had "permanent conditions that were not expected to improve" and "may progress or worsen with time." CP at 507-08. But he deferred to Dr. Pearson regarding Boettger's permanent work restrictions related to her mental health condition. Although Dr. McManus's testimony

showed that Boettger could work on a continuous part-time basis, his opinion was limited to Boettger's physical abilities.

From a psychiatric standpoint, Dr. Pearson testified that he diagnosed Boettger with major depressive disorder and pain disorder, and both disorders existed from October 24, 2006 to September 27, 2010. He stated that depression slows a person's thinking down and can adversely affect the ability to "pay attention, to remember, to make decisions and judgments about things, to plan, to organize." CP at 526. Although Boettger's depression "wax and waned" over the years, "on a more-probable-than-not basis, [it] prevent[ed] her from obtaining and performing reasonably continuous work" and "full-time work." CP at 522, 527. She had never "recovered enough or reached a point of stability long enough to be able to obtain and perform reasonably continuous full-time work." CP at 528.

Here, the testimony as a whole showed that Boettger was limited in her ability to work continuously from a physical standpoint and unable to work continuously from a psychiatric standpoint from October 24, 2006 to September 27, 2010.[6] Dr. McManus and Dr. Pearson were the only doctors that saw Boettger on multiple occasions during the time period at issue. And while Dr. Pearson qualified some of his statements on Boettger's ability to work, as being on a full-time basis, he did not qualify others. Thus, substantial evidence was presented to support the jury's verdict that Boettger could not continuously work and was temporarily totally disabled from October 24, 2006 to September 27, 2010. *Hunter*, 71 Wn. App. at 510. Therefore, we hold that

---

[6] Although Dr. Williamson-Kirkland and Dr. Schneider testified otherwise, weight and credibility decisions are for the jury to decide. *Herriman*, 142 Wn. App. at 232.

the trial court did not abuse its discretion when it denied Quad C's motion to vacate and for a new trial.[7]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, J.

_____
Maxa, A.C.J.

---

[7] Because Quad C only argues that Boettger failed to present evidence that she could not work part time and temporary total disability is concerned with a worker's ability to perform "generally available work of any kind on a reasonably continuous basis," Boettger's arguments regarding the return to light duty return to work with the employer of injury under RCW 51.32.090(4)(a) are not applicable to the claim raised here. *Hunter*, 71 Wn. App. at 510.